907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jimmy L. REYNOLDS, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondents.
 No. 89-3431.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1990.
 
 Before BOGGS and RALPH B. GUY, Jr., Circuit Judges and PAUL V. GADOLA, District Judge.*
 PER CURIAM:
 
 
 1
 Claimant, Jimmy L. Reynolds, appeals the decision of the Benefits Review Board (Board) denying him benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. Claimant asserts that the evidence supports his claim of disability due to pneumoconiosis. Since this case must be remanded on other grounds, we find it unnecessary to reach the merits of whether the decision of the administrative law judge (ALJ) is supported by substantial evidence.
 
 I.
 
 2
 The miner was born on December 13, 1934, and he worked as a coal miner for at least 16 years, ending in June 1973. While mining coal in 1965 the claimant fractured his lower back. He testified that the last day he worked as a coal miner he reinjured his back and thereafter received some disability payments. The claimant stated that for the last six years of coal mine employment he had a breathing problem that got progressively worse. He indicated that he had a bad cough and felt he could not return to coal mining or any other job that would require a similar amount of physical exertion. After claimant's coal mine employment he became a minister. He conceded smoking for a 20-year period, but added that he hadn't smoked for 20 years.
 
 
 3
 The claimant initially filed his claim on March 21, 1973 under Part B of the Black Lung Benefits Act, as amended, 30 U.S.C. Sec. 921 et seq. The Social Security Administration denied the claim on October 15, 1973. Claimant elected review of his denied claim by the Department of Labor pursuant to Sec. 435 of the Act, 30 U.S.C. Sec. 945. The Department of Labor denied the claim on August 27, 1980 and again on December 29, 1983. Claimant then requested a formal hearing, which was conducted before an ALJ on May 4, 1987. The ALJ issued a decision and order denying benefits on August 31, 1987, and the Board affirmed this denial in an order dated April 28, 1989.
 
 II.
 
 4
 The standard of review in black lung cases is that "[t]his court must affirm the decision below if it is supported by substantial evidence and in accordance with the applicable law." Couch v. Director, OWCP, 893 F.2d 130, 131 (6th Cir.1990), citing Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985) (per curiam). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).
 
 
 5
 Since this claim was under review by the Secretary of Labor after having been denied by the Secretary of Health, Education and Welfare, its determination is governed by 20 C.F.R. Parts 727 and 718. Saginaw Mining Co. v. Ferda, 879 F.2d 198, 203-204 (6th Cir.1989); Knuckles v. Director, OWCP, 869 F.2d 996, 998-999 (6th Cir.1989). Under Part 727, the claimant may establish a presumption of total disability due to pneumoconiosis by qualifying chest x-ray, ventilatory studies, blood gas studies, or reasoned medical opinion. 20 C.F.R. Sec. 727.203.
 
 
 6
 Five x-rays, with ten separate readings, were introduced into evidence. The first two x-rays were taken in 1972 and both were read as negative. The third x-ray was taken in June of 1980. It was read positive by Dr. Stokes, and reread negative by Dr. Pitman, a "B-reader". X-ray readers are rated by the U.S. Public Health Service, with' "B-readers" being rated higher than "A-readers". See Tobias v. Republic Steel Corp., 2 BLR 1-1277 (1981).
 
 
 7
 The fourth x-ray taken in February of 1984 was read positive by three doctors and negative by one doctor, all of whom were B-readers. The last x-ray, taken in May of 1985, was read positive by Dr. Stokes and reread as negative by Dr. Sargent, both of whom are B-readers. The claimant objected to the x-ray rereadings by Drs. Pitman and Sargent.
 
 
 8
 In all claims filed before January 1, 1982, 30 U.S.C. Sec. 923(b) prohibits the rereading of x-rays except for purposes of determining quality. Tobias, 2 BLR at 1-1282. This prohibition is applicable when each of the following threshold requirements has been met: (1) the physician who originally read the x-ray is either board-certified or board-eligible; (2) there is other evidence of a significant and measurable pulmonary or respiratory impairment; (3) the x-ray was performed in compliance with the requirements of the applicable quality standards and was taken by a radiologist or qualified technologist or technician; and (4) there is no evidence that the claim was fraudulently represented. 20 C.F.R. Sec. 727.206(b)(1).
 
 
 9
 The ALJ determined that three of the four requirements necessary to invoke the rereading prohibition were present, but that there was no other evidence of a significant and measurable pulmonary and respiratory impairment. The term "other evidence" means "medical tests such as blood-gas studies, pulmonary function studies or physical performance tests, [and] physical examinations or medical histories which establish the presence of a chronic respiratory or cardio-pulmonary condition ...". 20 C.F.R. Sec. 727.206(b)(2)(i). The term "pulmonary or respiratory impairment" means "an inability of the human respiratory apparatus to perform satisfactorily one or more of the three components of respiration, viz., ventilation, perfusion and diffusion." 20 C.F.R. Sec. 727.206(b)(2)(ii).
 
 
 10
 In determining that the other evidence requirement was not met, the ALJ summarized the entire balance of the medical evidence in the record. He found that two pulmonary function studies and two blood-gas studies were non-qualifying. The only other medical evidence was a letter written by Dr. Simpao on March 20, 1987 which stated that, based on medical examinations he conducted in 1980 and 1985, he would infer that petitioner was unable to do any type of labor such as coal mining or anything similar due to pneumoconiosis. The ALJ held that this was not a documented opinion exercising reasoned medical judgment and would not support the presumption of total disability found in 20 C.F.R. Sec. 727.203(a)(4). Therefore, he determined that the "other evidence" requirement necessary to invoke the rereading prohibition of 30 U.S.C. Sec. 923(b) was absent.
 
 
 11
 The claimant maintains that three exhibits constitute "other evidence" of a pulmonary or respiratory disorder: director's exhibits D11 and D27, and claimant's exhibit C1. D11 is a record of a physical examination conducted on June 27, 1980 that does not include a diagnosis of pneumoconiosis. D27 is a record of an examination conducted on May 13, 1985 that includes a diagnosis of pneumoconiosis. C1 is the March 20, 1987 letter from Dr. Simpao that "infers" disability.
 
 
 12
 Although D27 constitutes "other evidence" because it is a record of a physical examination as defined in 20 C.F.R. Sec. 727.206(b)(2)(i), it does not meet the "pulmonary or respiratory impairment" requirement as defined in 20 C.F.R. Sec. 727.206(b)(2)(ii) because there is no explicit finding as to a loss of any of the three components of respiration. Thus, although the exhibit diagnoses pneumoconiosis, it does not meet the "other evidence ... [of] pulmonary or respiratory impairment" provision of 30 U.S.C. Sec. 923(b) required to prohibit the rereading of x-rays.
 
 
 13
 Before invoking the interim presumption of Sec. 727.203(a)(1) the ALJ must weigh all of the x-rays and explain why he credits or discounts particular readings. Bozick v. Consolidation Coal Co., 5 BLR 1-574 (1983). If the ALJ finds that contrary interpretations of the same x-ray by two B-readers are of equal probative value, the benefit of the doubt shall be resolved in the claimant's favor. Isaacs v. Bailey Mining Co., 7 BLR 1-62 (1984). If, however, the ALJ credits the x-ray interpretation of one B-reader over the contrary interpretation of the same film by another B-reader, the decision must be based on an adequate rationale. Id.
 
 
 14
 Another factor upon which the ALJ may rely is the numerical weight of the evidence. Sheckler v. Clinchfield Coal Co., 7 BLR 1-128 (1984). The ALJ may assign greater weight to the more recent x-ray evidence. Cominsky v. Director, OWCP, 3 BLR 1-557 (1981). As a general rule, more weight is given to the most recent evidence because pneumoconiosis is a progressive and irreversible disease. Stanford v. Director, OWCP, 7 BLR 1-541 (1984). The rule, however, is not to be applied mechanically to require that later evidence be accepted over earlier evidence. Burns v. Director, OWCP, 7 BLR 1-597 (1984). Where the miner's last exposure was long ago, for example, it may be reasonable to expect that pneumoconiosis would be evidenced in earlier x-rays. Therefore, positive readings of the most recent x-rays are not necessarily entitled to more evidentiary weight than earlier negative ones. Sabett v. Director, OWCP, 7 BLR 1-299 (1984). In weighing x-ray evidence, the paramount principle to be applied by the ALJ is to rely upon the evidence judged to be most probative. Tokarcik v. Consolidation Coal Co., 6 BLR 1-666, 1-668 (1983).
 
 
 15
 The ALJ placed minimal weight on the first two negative x-rays taken in 1972 because of their age. The third x-ray was read positive by Dr. Stokes, but negative by Dr. Pitman who was a B-reader. The fourth x-ray taken in 1984 was read by four B-readers. The ALJ discounted the positive readings of Drs. Myers and Traughber because they were not board-certified radiologists as were the other two readers, Drs. Bassali and Elmer. The ALJ gave more weight to Dr. Elmer's negative reading than to Dr. Bassali's negative reading because of Dr. Elmer's impressive educational and professional qualifications. The fifth x-ray taken in 1985 was read positive by Dr. Stokes and negative by Dr. Sargent. The ALJ placed more weight on Dr. Sargent's reading because, while both were board-certified radiologists, only Dr. Sargent was a B-reader.
 
 
 16
 On this appeal respondents argue that a remand is required to enable the Department of Labor to provide claimant with a complete pulmonary examination. The Department of Labor has the duty to ensure that a claimant is provided a complete pulmonary evaluation. 30 U.S.C. Sec. 923(b); 20 C.F.R. Secs. 725.405(b), 725.406(b). That duty is not discharged if the record contains no opinion as to the miner's respiratory disability, or only an opinion that is not credible. See Newman v. Director, OWCP, 745 F.2d 1162 (8th Cir.1985).
 
 
 17
 The only evidence in the record regarding pulmonary studies are the two reports of Dr. Simpao, D11 and D27, and the doctor's letter, C1. The 1985 report, D27, diagnoses pneumoconiosis but there is no finding of total disability. The letter, which states that the doctor "infers" that petitioner is disabled, is not a documented opinion of a physician exercising reasoned medical judgment. 20 C.F.R. Sec. 727.203(a)(4). Therefore, this case must be remanded to the ALJ so that a complete pulmonary examination may be obtained in accordance with the governing regulations.
 
 
 18
 Since a determination as to total disability under 20 C.F.R. Part 727 can not be made absent the complete pulmonary examination, an analysis of entitlement under Part 718 is premature. On remand, however, it should be noted that if petitioner fails to show entitlement under Part 727, his claim must then be considered under Part 718. Couch v. Director, OWCP, 893 F.2d 130, 132 (6th Cir.1990); Belcher v. Director, OWCP, 895 F.2d 244, 246 (6th Cir.1989); Knuckles v. Director, OWCP, 869 F.2d 996, 999 (6th Cir.1989).
 
 
 19
 REMANDED.
 
 
 
 *
 The Honorable Paul V. Gadola, United States District Court for the Eastern District of Michigan, sitting by designation