**Joseph J. SKUKAN, Petitioner,**

v.

**CONSOLIDATION COAL COMPANY; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 92–3281.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 17, 1992.

Decided May 18, 1993.

Timothy F. Cogan, O'Brien, Cassidy & Galagher, Wheeling, WV (argued and briefed), for Joseph J. Skukan.

William S. Mattingly, Jackson & Kelly, Charleston, WV (argued and briefed), for Consolidation Coal Co.

Rae Ellen Frank James, Matthew P. Levin (briefed), U.S. Dept. of Labor, Office of Sol., Washington, DC, for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Before: KEITH and JONES, Circuit Judges; and JOINER, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Petitioner Joseph J. Skukan seeks review of a Benefits Review Board ("BRB") decision denying his application for black lung disability benefits pursuant to the provisions of the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (1988 & Supp. II 1990) [hereinafter "Act"]. In addition, Respondent Consolidation Coal Company ("Consolidation") seeks a determination of whether the "true doubt rule" is violative of the black lung disability benefits regulations and Section 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d) (1988) [hereinafter the "APA"]. If we decide to reverse the BRB's decision, Consolidation also seeks a remand to the BRB for a determination of certain factual findings made by the Administrative Law Judge ("ALJ"). For the reasons stated herein, we reverse the BRB's decision and order that Skukan be awarded benefits. We conclude that the true doubt rule is not violative of the regulations or the APA. Finally, we reject Consolidation's invitation to remand the case to the BRB.

I.

Skukan filed an application for black lung benefits with the United States Department of Labor in February 1983. After reviewing the evidence assembled, a Department of Labor deputy commissioner determined that there was insufficient evidence to support Skukan's claim for entitlement to benefits.[1] After the deputy commissioner rendered a decision denying benefits, Skukan requested a hearing before an ALJ.

The ALJ held a hearing on June 4, 1987. Prior to the hearing, Skukan proffered the examination reports of Drs. Samson D. Reyes, MD, J.P. Tipton, MD, and Macy I. Levine, MD. Dr. Levine's April 3, 1987 examination was offered on May 5, 1987, just prior to the deadline for submitting evidence for the June 4, 1987 hearing. Because of this relatively late submission, Consolidation requested an opportunity to submit another examination. Skukan objected to that request. The ALJ, in overruling Skukan's objection, allowed Consolidation the opportunity to examine Skukan and submit additional medical evidence. Dr. Altmeyer examined Skukan on May 13, 1987 and then submitted his findings to the ALJ. Skukan was then given the opportunity to get another examination. He arranged for and attended an examination by Dr. Thomas P. Connelly, MD, on June 17, 1987 and submitted that examination report as evidence.

In a written opinion, the ALJ found, on the basis of conflicting X-ray evidence and pursuant to the true doubt rule, that Skukan had pneumoconiosis. The ALJ then found that Skukan proved, with the benefit of a rebuttable presumption which Consolidation failed to rebut, that his pneumoconiosis arose, at least in part, out of coal mine employment.

The ALJ's then summarized the medical reports and opinions:

Dr. DelVecchio diagnosed chronic bronchitis and gave no disability evaluation. Dr. Altmeyer diagnosed chronic bronchitis and mild hypoxemia at rest and did not believe the Claimant [i.e., Skukan] was disabled. Dr. Reyes diagnosed mild emphysema, chronic obstructive lung disease and chronic bronchitis and gave no disability evalua-

---

\* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Among the evidence submitted to the deputy commissioner by Consolidation, Skukan's last employer of at least one year's duration, was a medical examination by Dr. Robert B. Altmeyer, MD.

tion. Dr. Tipton diagnosed chronic obstructive pulmonary disease and gave no disability evaluation. Dr. Levine found pneumoconiosis and normal ventilatory studies, but failed to take blood gas studies, although Claimant's exercise tolerance test was abnormal. He believed the Claimant was totally disabled due to coal dust exposure but did not discuss Claimant's long history of cigarette smoking to my satisfaction. Dr. Garson reviewed Dr. Altmeyer's blood gas studies and ventilatory studies and did not agree with Dr. Altmeyer's interpretation. Dr. Connelly felt that the Claimant had pneumoconiosis. He relied upon a Board–Certified Radiologist who found pneumoconiosis and I feel in combination with his deposition and testimony, he took into account Claimant's long history of cigarette smoking. Dr. Morgan reviewed various medical reports and opinions of other physicians and found that the Claimant did not have a significant respiratory impairment.

J.A. at 20. After summarizing the evidence, the ALJ stated: "Based upon the overwhelming evidence in my view, Claimant is in fact disabled due to a respiratory condition and certainly cannot return to work as a coal miner. However, I find that he has failed to show a nexus between his pneumoconiosis and his respiratory impairment." *Id.* at 21.

In finding that Skukan failed to establish the required nexus between his pneumoconiosis and his respiratory impairment, the ALJ noted:

Claimant's most favorable evidence are the opinions of Drs. Levine and Connelly. Dr. Levine fails to take into account Claimant's long history of cigarette smoking and I give his report less weight than the opinion of Dr. Connelly. Dr. Connelly's opinion is outweighed by the opinions of Dr. Altmeyer and Dr. Morgan since those two physicians' opinions seem to follow logically the diagnostic studies which they reviewed. Thus, their reports seem more well reasoned than the report of Dr. Connelly. While the cross-examination of Dr. Altmeyer was revealing and effective, it was insufficient to show true bias on the part of Dr. Altmeyer or that Dr. Altmeyer would lie under oath. While Dr. Garson may have disagreed with Dr. Altmeyer's inter-

pretation of 1984 blood gas studies and vent studies, no physician discredited Dr. Altmeyer's most recent report on May 14, 1987. There is no circumventing the fact that Dr. Connelly based his conclusion on Claimant's subjective complaints and a chest x-ray. While his report may establish that the Claimant has pneumoconiosis and that he has a respiratory impairment, this report does not provide the nexus between the two. He agreed that Claimant's cigarette smoking was significant and that he was overweight. I believe the greater weight of the evidence shows that, as Dr. Morgan explained in his report of May 4, 1987, Claimant's hypoxemia can be attributed to his obesity and cigarette smoking. For these reasons, I feel the greater weight of the evidence fails to show that the Claimant's pneumoconiosis has caused his totally disabling respiratory or pulmonary impairment.

*Id.* The ALJ's findings that Dr. Connelly's report fails to show a nexus between pneumoconiosis and his respiratory impairment contradicts the ALJ's earlier notations that "[i]n Dr. Connelly's opinion, Claimant's long cigarette smoking history would produce some of his symptoms. However, *his primary disability is due to pneumoconiosis....* In Dr. Connelly's opinion, *Claimant's 37 years of coal mining and dust exposure is a more significant factor and a predominant cause for the Claimant's disability.*" *Id.* at 20 (emphasis added).

The ALJ concluded that Skukan failed to show that his respiratory impairment was caused by his pneumoconiosis, and that Skukan is not entitled to benefits under the Act. As a result, the ALJ denied Skukan benefits.

Both Skukan and Consolidation appealed the ALJ's decision to the BRB. The BRB affirmed the ALJ's decision and order denying benefits.

## II.

■ Our scope of review is limited—if the ALJ's findings are supported by substantial evidence and are in accordance with the applicable law, the ALJ's findings are conclusive. *Neace v. Director, OWCP,* 867 F.2d 264, 267 (6th Cir.1989); *Welch v. Benefits*

*Review Bd.*, 808 F.2d 443, 445 (6th Cir.1986). Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 488 (6th Cir.1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938))). As the Seventh Circuit stated:

> The substantial evidence test required in black lung cases is less rigorous than the burden of proof in a jury trial. In reviewing findings of the trier of fact, the court cannot reweigh evidence, but may only inquire into the existence of evidence to support the findings. Thus, the reviewing court may not set aside an inference because it finds an opposite one more reasonable, or because it questions its factual basis.

*Peabody Coal Co. v. Benefits Review Bd.*, 560 F.2d 797, 802 (7th Cir.1977) (citations omitted). In deciding whether a decision meets the substantial evidence requirement, the court may consider whether an ALJ adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record. *Director, OWCP v. Congleton*, 743 F.2d 428, 430 (6th Cir.1984).

### III.

Skukan first contends that substantial evidence does not support the ALJ's decision regarding disability causation. As noted above, the ALJ found that Skukan proved that he had pneumoconiosis; that he engaged in coal mine employment which caused his pneumoconiosis; and that Skukan was totally disabled. The ALJ also found, however, that Skukan did not prove that his pneumoconiosis caused, at least in part, his total disability.

■ Since Skukan's claim was filed after March 31, 1980, the ALJ properly evaluated Skukan's claim under the permanent regulations found at 20 C.F.R. pt. 718 (1992). *Adams v. Director, OWCP*, 886 F.2d 818, 820

(6th Cir.1989). Skukan must prove the following facts to receive black lung benefits: 1) that he suffers from pneumoconiosis; 2) that his pneumoconiosis arose, at least in part, out of his coal mine employment; and 3) that he is totally disabled due to, at least in part, pneumoconiosis. *Id.* at 820, 825.

In challenging the ALJ's conclusions, Skukan argues that the evidence clearly shows that his totally disabling respiratory impairment was due, at least in part, to his pneumoconiosis. Skukan is correct that some of the evidence does tend to show that his disability was due to pneumoconiosis. In particular, Drs. Levine and Connelly specifically note that, in their opinion, the disability causation requirement has been met.[2] There is also evidence, however, by Dr. Altmeyer and Dr. Morgan which may substantially support the ALJ's decision.

As a result, our review of the ALJ's decision boils down to whether the ALJ applied the law correctly.

### A.

■ Skukan first argues that the ALJ erred by ordering him to submit to a second examination, over his objection. Pursuant to 20 C.F.R. § 725.456(e) (1992), the ALJ has the discretion to order a second employer-sponsored physical exam of the claimant. *Cf. Amax Coal Co. v. Director, OWCP*, 892 F.2d 578, 581 (7th Cir.1989). Section 725.456(e) provides the ALJ with the discretion to provide for further evidentiary development when "it is determined by the administrative law judge that the documentary evidence . . . is incomplete as to any issue which must be adjudicated." Furthermore, the ALJ has a duty to provide the parties a fair hearing. 20 C.F.R. § 725.455(c) (1992); *Amax*, 892 at 581.

Under the Act, the crucial inquiry is whether a claimant is disabled due to pneumoconiosis at the time of the hearing. *Cooley v. Island Creek Coal Co.*, 845 F.2d 622, 624 (6th Cir.1988). Therefore, the ALJ, in

---

**2.** Skukan also argues that he presented evidence from Drs. Levine, Connelly, Reyes, Tipton, and DelVecchio which shows that disability causation was proven by showing that breathing airways were obstructed by pneumoconiosis and by showing that other ailments which may have caused total disability may have been aggravated by pneumoconiosis. The ALJ did not specifically address those contentions in his opinion.

its discretion, could permit the parties an opportunity to develop and present more recent evidence. Based on the facts of this case, it was not an abuse of discretion for the ALJ to order a second examination. Because three years had elapsed between the time of Consolidation's first physical examination of Skukan, allowing Consolidation an opportunity to submit a second examination was a reasonable way of providing a fair hearing in this case. The ALJ further allowed Skukan to submit additional evidence after Consolidation submitted the second medical report. Therefore, Skukan's argument on this score is without merit.

### B.

 Skukan argues that the ALJ did not merely weigh the evidence against him, but rather misconstrued the evidence and then proceeded to weigh the evidence against him.[3] We agree.

We find that the ALJ did not merely weigh the evidence against Skukan. Rather, we find that the ALJ unsatisfactorily dealt with evidence to the contrary, and then weighed the negative evidence against him. *Cf. Congleton,* 743 F.2d at 430.

Of particular moment is the way the ALJ treated the evidence which showed pneumoconiosis causing total disability. For example, the ALJ mischaracterized the report of Dr. Connelly. The ALJ says, "While [Dr. Connelly's] report may establish that the Claimant has pneumoconiosis and that he has a respiratory impairment, this report does not provide the nexus between the two." J.A. at 21. Dr. Connelly, however, clearly and explicitly deals with the disability causation requirement by stating:

> Because of this patient's history, physical examination, and clinical findings, it is my [professional] opinion that he has coal worker's pneumoconiosis. In addition, it is my professional opinion, with reasonable medical certainty, *that the coal worker's pneumoconiosis is the result of his total and cumulative time time [sic] spent as*

*an active coal miner and has rendered him totally and permanently disabled. Id.* at 218 (emphasis added).

In addition to unsatisfactorily dealing with contrary evidence, we find that the ALJ inappropriately relied on reports of Dr. Altmeyer and Dr. Morgan relative to the causation issue. On the one hand, the ALJ holds that "[b]ased upon the overwhelming evidence in my view, Claimant is in fact disabled due to a respiratory condition." *Id.* at 21. Juxtaposed with this assessment are the reports of Dr. Altmeyer and Dr. Morgan which hold that Skukan is not totally disabled. In addition to finding no disability, both doctors concluded that Skukan did not have pneumoconiosis, contrary to the view of the ALJ, based on the evidence presented. Therefore, Dr. Altmeyer's and Dr. Morgan's conclusions about causation or lack thereof are of little help to the analysis. While we have stated in an unpublished opinion that the ALJ may consider opinions of physicians who found no pneumoconiosis when making the determination of causation, *see Castle v. Director, OWCP,* No. 90–3041, 1990 WL 171582, at *3, 1990 U.S.App. LEXIS 19818, at *9 (6th Cir. Nov. 7, 1990) [917 F.2d 1304 (table) ] ("The ALJ is entitled to hear all medical evidence and assign levels of credibility to each."), *cert. denied,* —— U.S. ——, 111 S.Ct. 2896, 115 L.Ed.2d 1061 (1991), we conclude that the better way for the ALJ to proceed is to treat as less significant those physicians' conclusions about causation when they find no pneumoconiosis. *See Adams,* 886 F.2d at 826 (this Court held that where a physician incorrectly concluded that the claimant was not suffering from pneumoconiosis, the ALJ *"properly* rejected [the physician's] conclusion as to etiology") (emphasis added).

Because Dr. Altmeyer's and Dr. Morgan's reports are of little help with respect to causation, we are left with Dr. Connelly's and Dr. Levine's reports which conclude that Skukan's pneumoconiosis was a cause of his totally disabling respiratory impairment as the most significant probative evidence on this question in the record. We hold that

---

**3.** Skukan points to many other alleged errors by the ALJ. Because we find the following alleged error to have merit, which ultimately requires

that we grant Skukan the relief he seeks, we decline to review the other alleged errors.

Skukan has satisfied his burden of showing that his total disability was "due to" pneumoconiosis.

### IV.

Consolidation cross-appeals, arguing that: 1) the ALJ's determination that the radiographic evidence supports a finding of Skukan's pneumoconiosis is based upon an incorrect application of the law and is not supported by substantial evidence; and 2) the ALJ erred in weighing the evidence concerning the existence of a disabling pulmonary impairment under Section 718.204(c) (1992).

### A.

■ As stated earlier, one of the things that a claimant must prove in order to receive black lung benefits is that he/she has pneumoconiosis. Pursuant to Section 718.-202(a)(1) (1992), pneumoconiosis can be established by producing chest X rays which show the existence of pneumoconiosis. The chest X rays produced by the claimant must show the presence of pneumoconiosis by a preponderance of the evidence. *Adams*, 886 F.2d at 820 (citing 20 C.F.R. § 718.403; *Director, OWCP v. Mangifest*, 826 F.2d 1318, 1320 (3d Cir.1987)).

In weighing the radiographic evidence of record in this case, the ALJ noted that there was equally probative but conflicting X-ray evidence regarding whether Skukan has pneumoconiosis; however, pursuant to the true doubt rule, the ALJ gave the benefit of the doubt to Skukan and thus found that Skukan had established the presence of pneumoconiosis based upon chest X-ray evidence. The BRB has defined the true doubt rule as follows:

"True doubt" is said to exist if equally probative but contradictory medical documents and testimony are presented in the record, and selection of one set of facts would resolve the case against the claimant but the selection of the contradictory set of facts would resolve the case for the claimant.

*Conley v. Roberts & Schaefer Co.*, 7 Black Lung Rep. (MB) 1–309, 1–312 n. 4 (Ben.Rev. Bd. July 16, 1984). Consolidation argues that the use of the true doubt rule is violative of the APA[4] and 20 C.F.R. § 718.403 (1992).[5]

Consolidation first argues that the ALJ's use of the true doubt rule violated the burden of proof required under Section 7(c) of the APA and Section 718.403. In addition, Consolidation implies that the rule lowers the preponderance of the evidence standard as required under the APA and, presumably, under the regulations.

### B.

■ The Supreme Court, in *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), dealt with the burden of proof requirements under 20 C.F.R. pt. 727 claims, the predecessor to Part 718 claims.[6] Under § 727.203(a) (1992), a claimant who engaged in coal mine employment for at least 10 years is entitled to an "interim presumption" of eligibility for disability benefits if he/she meets one of four evidentiary requirements: 1) a chest X ray "establishes" the presence of pneumoconiosis; 2) ventilatory studies establish the presence of a chronic respiratory or pulmonary disease of a specified severity; 3) blood gas studies demonstrate an impairment in the

---

4. Section 7(c) of the APA provides, in pertinent part:

Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof.... A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence.

The Supreme Court has held that this section establishes a preponderance of the evidence burden of proof on the proponent of a rule or order. *Steadman v. SEC*, 450 U.S. 91, 100–01, 101 S.Ct. 999, 1007, 67 L.Ed.2d 69 (1981).

5. 20 C.F.R. § 718.403 provides that the burden of proving a fact alleged in connection with any provision of Part 718 shall rest with the party making such allegation.

6. Generally, 20 C.F.R. pt. 727 applies to claims filed prior to April 1, 1980, while Part 718 applies to all claims filed after March 31, 1980 and may apply to claims filed prior to March 31, 1980, but adjudicated, at least in part, thereafter. *See Saginaw Mining Co. v. Ferda*, 879 F.2d 198, 204–05 (6th Cir.1989).

transfer of oxygen from the lungs to the blood; or 4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishes a totally disabling respiratory or pulmonary impairment. 20 C.F.R. § 203(b) (1992) provides that "all relevant medical evidence shall be considered" in the adjudication of a claim, and that the interim presumption is rebutted if the evidence establishes: 1) that the claimant is doing his/her usual or comparable work; 2) that he/she is capable of doing such work; 3) that his/her disability did not arise, even in part, out of coal mine employment; or 4) that he/she does not or did not have pneumoconiosis. The Supreme Court held that Section 727.-203(a) requires that the claimant, in order to get the presumption, establish at least one of the qualifying facts by a preponderance of the evidence.[7] *Mullins,* 484 U.S. at 147–61, 108 S.Ct. at 433–41.

In determining that the claimant must establish facts to satisfy the interim presumption by a preponderance of the evidence, the Court's decision would seem to cast some doubt on the validity of the true doubt rule because the true doubt rule gives the nod to the claimant even though the claimant has established his/her evidence only up to 50:50 ratio. However, the Supreme Court noted, seemingly with approval, that the Benefits Review Board " 'has consistently upheld the principle that, where true doubt exists, that doubt shall be resolved in favor of the claimant.' " *Mullins,* 484 U.S. at 144 n. 12, 108 S.Ct. at 432 n. 12 (quoting *Lessar v. C.F. & I. Steel Corp.,* 3 Black Lung Rep. (MB) 1–63, 1–68 (Ben.Rev.Bd. Mar. 31, 1981)). Furthermore, the Court quoted with approval the comments that accompanied the publication of the regulations in which the Secretary of Labor stated, " 'The [Black Lung Benefits] Act embodies the principle that doubt is to be resolved in favor of the claimant, and that principle plays an important role in claims determinations both under the interim presumption and otherwise.' " *Id.* at 156 n. 29,

108 S.Ct. at 438 n. 29 (quoting 43 Fed.Reg. 36,826 (1978)).

While the Supreme Court did not say expressly and definitely that the true doubt rule remains valid in light of its holding that the preponderance of the evidence standard is to be applied before a claimant can get the interim presumption, the Court did not strike it down as invalid either. Despite the nebulous nature of the Court's opinion on that issue, the Seventh Circuit has stated, "the Court left the true doubt rule intact." *Freeman United Coal Mining Co. v. OWCP,* 988 F.2d 706, 711 (7th Cir.1993). In addition, after reviewing the Court's references to the true doubt rule in *Mullins,* the Seventh Circuit stated, "Far from casting doubt on the true doubt rule, the above language treats the rule as a reasonable interpretation of the regulations." *Id.*

In addition to concluding that the Supreme Court, in *Mullins,* kept the true doubt rule intact, the Seventh Circuit's decision in *Freeman* established the validity of the true doubt rule in Part 727 claims in relation to the APA. In *Freeman,* the employer argued that the "true doubt rule" violated Section 7(c) of the APA because the rule allows an ALJ to award black lung benefits to a claimant who has not proven his/her right to them by a preponderance of the evidence. In addition, the employer argued that the rule impermissibly lowered the standard of proof required by the APA.

The Seventh Circuit found both arguments to be without merit. First, the court noted that the burden of proof requirement in the APA is really a burden of going forward, not a burden of persuasion. *Id.* 988 F.2d at 710 (citing *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 404, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983)); *but see Maher Terminals, Inc. v. Director, OWCP,* 992 F.2d 1277, 1281 (3d Cir.1993) (burden of proof requirement in the APA is both a burden of going forward and a burden of persuasion; to meet its burden of persuasion, the proponent of a sanction, rule or order must prove its case by a preponderance of the evidence).

---

**7.** In determining that the preponderance of the evidence standard applied to prove a fact which would invoke the interim presumption, the Court determined that the preponderance of the evidence standard was required by the regulation

itself. The Court did not pass on whether Section 7(c) of the APA required a claimant to prove an invocation fact by a preponderance of the evidence. *Mullins,* 484 U.S. at 161 n. 35, 108 S.Ct. at 441 n. 35.

From that, the court concluded that the "true doubt rule does not alleviate the claimant's burden of going forward. Before a claimant can benefit from the rule, he must put in some evidence showing the presence of pneumoconiosis." *Freeman*, at 711.

Second, the court found that the true doubt rule does not lower the standard of proof required by the APA. The court noted that the APA has a preponderance of the evidence requirement. *Id.* (citing *Steadman v. SEC*, 450 U.S. 91, 100–01, 101 S.Ct. 999, 1007, 67 L.Ed.2d 69 (1981)). The court noted that the "burden of persuasion may be legislatively or judicially assigned to a specific party to establish a particular fact." *Id.* The court explained that in Part 727 claims:

> the true doubt rule allows an ALJ to invoke the presumption of disability in favor of a claimant once the claimant has produced prima facie evidence of pneumoconiosis that has not been overcome by the employer's opposing evidence. The employer then must persuade the ALJ that the claimant did not have pneumoconiosis.

*Id.* As a result, it found that the true doubt rule does not contravene Section 7(c), "for its application results in nothing more than a judicial assignment of the burden of persuasion to the employer." *Id.*

Although the Supreme Court in *Mullins* and the Seventh Circuit in *Freeman* dealt with Part 727, we find that the Seventh Circuit's reading of *Mullins* is persuasive, correct and applicable to Part 718 as well.

Furthermore, for several reasons, we find that the true doubt rule in the Part 718 context can properly co-exist with the preponderance of the evidence standard mandated by the APA, the regulations, and case law.

First, the true doubt rule advances the goals of the Act. We note that "[t]he Act is remedial in nature, and it must be liberally construed to include the largest number of miners as benefit recipients." *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir.1993) (quoting *Southard v. Director, OWCP*, 732 F.2d 66, 71 (6th Cir.1984)). As explained by the Seventh Circuit:

> [t]he true doubt rule is a judicial construct designed to effectuate Congress's intent that the Black Lung Benefits Act be liberally construed to ensure payment to deserving claimants. The rule derives from a Senate Report accompanying 1972 amendments to the black lung program which noted that the Act "is intended to be a remedial law.... In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors." S.Rep. No. 743, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 2305, 2315. Congress reaffirmed its expressed intent that the benefit of any evidentiary doubt be given to the miner when it further amended the Act in 1977.

*Freeman*, 988 F.2d at 709–10.[8]

Second, we note that the APA's requirement of the preponderance of the evidence

---

8. Because the true doubt rule is a judicial construct which sprang from a fundamental concern of Congress that there were many coal miners who were being destroyed by black lung diseases, we find it important to refresh our collective memory to this problem. To that end, we cite to the legislative history of the 1972 amendments to the Federal Coal Mine Health and Safety Act, cited in *Morris v. Mathews*, 557 F.2d 563, 567–70 (6th Cir.1977):

BACKGROUND

The Federal Coal Mine Health and Safety Act of 1969 recognized, for the first time in Federal legislation, the inadequacy of compensation to miners totally disabled by coal workers' pneumoconiosis, or, as it is commonly called, "black lung." As the Senate Report on the original Act stated, this irreversible disease was "believed to have afflicted 100,000 of the Nation's active and retired miners." President Nixon, in his March 1969 message which called for a new coal mine health and safety

act, said, "Death in the mines can be as sudden as an explosion or a collapse of a roof and ribs, or it comes insidiously from pneumoconiosis, or black lung disease."

At the time the Coal Mine Health and Safety Act was signed into law, only two and one-half years ago, it was generally thought that coal miners' occupational breathing disabilities were encompassed by the term "pneumoconiosis". Members of Congress, the knowledgeable press, and many physicians believed this to be the case. It was generally believed that title IV of the Act, relating to black lung benefits, would be a satisfactory means of compensating miners who were incapacitated by respirable diseases, as well as the surviving widows and children of miners who had died from the dread black lung.

*Since the passage of that basic, necessary, desirable Act however, experience has taught us that all is not as we expected.* As of March 3, 1972, 356,857 claims had been filed since the

effective date of the Act, December 30, 1969. According to the Social Security Administration 91,784 disabled miners and 74,809 widows have received benefits, for a total of 166,593 claims, while 169,999 claims have been denied.

*Not only have the number of claims far exceeded those earlier expectations of Congress, indicating a more widespread·and more serious problem than they anticipated, but also the rate of denials—more than fifty percent nationwide, and as high as 72 percent in some states—suggests strongly that the solution has not been nearly as complete as Congress believed and expected it would be.*

. . . .

Existing law limits benefits to those whose claims are based on totally disabling pneumoconiosis, a progressive chronic dust disease of the lung. *Although title IV of the 1969 Act is couched in terms of pneumoconiosis, it has become glaringly apparent that the Act is not benefitting many of the nation's disabled coal miners who Congress intended to benefit. Testimony has indicated that miners with disabling breathing impairments who cannot be diagnosed medically as suffering from pneumoconiosis, because of the state of the art, are being denied benefits though they are as severely and often times more severely impaired than miners whose claims have been granted.*

*The reasons for these denials are many. The great majority of denials are attributed to the inability of the miner to present X-ray evidence of the disease. Some have been denied because the simple breathing test, which measures only ventilatory capacity, may not adequately detect disabling respiratory or pulmonary impairment. Some have been denied because of the failure to recognize the special problems encountered by disabled miners in obtaining gainful employment outside of coal mining in Appalachia.*

Over a hundred years ago, Emile Zola wrote his nonmedical description of the coal miner in *Germinal:*

"Have you been working long at the mine?"

He flung open both arms.

"Long? I should think so. I was not eight when I went down and I am fifty eight. They tell me to rest, but I'm not going to; I'm not such a fool. I can get on for two years longer, to my sixtieth, so as to get the pension."

A spasm of coughing interrupted him again.

"I never used to cough; now I can't get rid of it. And the queer thing is that I spit."

The rasping was again heard in his throat, followed by a black expectoration.

"Is it blood?"

He slowly wiped his mouth with the back of his hand.

"No, it's coal. I've got enough in my carcass to warm me till I die. And it's five years since I put a foot down below. I stored it up, it seems, without knowing it."

Suffice it to say that this miner's widow, were she alive today, would have great difficulty in obtaining benefits.

The reality of this projection have been borne out by the rate of denials to black lung claimants and their widows. In some states as many as 70 percent of the applicants have been turned down. The national average is a 50 percent denial rate.

Congress intended, through the 1969 Act, to recompense the disabled miner for his mine-related disease. It was believed that title IV would provide benefits to those who were so disabled.

Congress recognized when the Act was being considered, however, that the chest X-ray, or roentgenogram, was an imperfect means of ascertaining the existence of pneumoconiosis in coal miners. Testimony to that effect was provided by the Surgeon General, who produced a Public Health Service study showing the the [sic] existence of pneumoconiosis from autopsies performed on deceased coal miners who had, while living, been diagnosed by a means of X-ray examination to be free from pneumoconiosis. For this reason the Senate Committee report on the 1969 Act specifically referred to the need to require medical tests other than the X-ray to "establish the extent and severity of the disease." Many cases have come to the Committee's attention in which a minor is suffering from a severely disabling respiratory or pulmonary impairment, and yet he has no X-ray evidence of pneumoconiosis.

Because of the continuing recognition of the fact that X-ray evidence is not always satisfactory, the Committee retained a provision of the House bill which prohibits the denial of a claim solely on the basis of the results of a chest roentgenogram. It was anticipated by Congress in 1969 that other tests to establish pneumoconiosis would be developed through research. This has not been done, and the Social Security Administration continues to rely exclusively on the results of X-ray evidence.

*Testimony has further indicated that a negative X-ray is not proof positive of the absence of pneumoconiosis. Studies in addition to that of the Public Health Service confirm the existence of the disease by autopsy where a chest X-ray was negative, indicating an error of 25 percent in diagnosis.*

. . . .

*Other testimony indicates that an X-ray may often be clouded by the presence of emphysema so that pneumoconiosis does not show on the X-ray. In some cases it has been alleged that the X-ray was of poor quality, and for that reason did not show the existence of black lung.*

*Senator Robert C. Byrd, in testimony before the Subcommittee on Labor on the pending black lung benefits legislation, spoke eloquently of this urgent problem. He said:*

*"Let us stop quibbling with dying men as to whether their lungs are riddled with black lung or whether they are affected with asthma, or silicosis, or chronic bronchitis."*

. . . .

[Congress, in enacting the Black Lung Benefits Act of 1972, stated:]

*The Black Lung Benefits Act of 1972 is intended to be a remedial law—to improve upon the 1969 provisions so that the cases which*

standard only goes to the burden of production. *See Transportation Management*, 462 U.S. at 403 n. 7, 103 S.Ct. at 2475 n. 7. As a result, a claimant's burden of production, and likewise, the APA's burden of production requirement, are satisfied by producing evidence which would show the presence of pneumoconiosis. *Freeman*, 988 F.2d at 711. Therefore, the APA is not violated by the true doubt rule because the rule does not disturb the claimant's burden of producing evidence which shows the existence of pneumoconiosis. *Id.*

Third, because the regulations follow the APA, the regulations would comport with the APA by assigning the burden of production to the claimant. Section 718.403 does that. As a result, the true doubt rule does not violate Section 718.403, at least to the extent that it follows the APA requirements. However, Section 718.403 also assigns the burden of persuasion to the claimant. As the Seventh Circuit notes, "the burden of persuasion may be legislatively or judicially assigned to a specific party to establish a particular fact." *Freeman*, 988 F.2d at 711 (citing *Transportation Management*, 462 U.S. at 403 n. 7, 103 S.Ct. at 2475 n. 7; *Alabama By–Prods. Corp. v. Killingsworth*, 733 F.2d 1511, 1514 (11th Cir.1984)). Although the burden of persuasion is assigned to the claimant, the true doubt rule does not run afoul of the burden of persuasion requirement of Section 718.403 because the regulations themselves allow that all reasonable doubts should be decided in favor of the claimant. Section 718.3(c) (1992) commands that claimants be given the benefit of all reasonable doubts:

> In enacting Title IV of the Act, Congress intended that claimants be given the benefit of all reasonable doubt as to the existence of total or partial disability or death due to pneumoconiosis. This part shall be construed and applied in that spirit and is designed to reflect that intent. However, no claim shall be approved unless the record considered as a whole, in light of any applicable presumptions, provides a reasonable basis for determining that the cri-

teria for eligibility under the Act and this part have been met.

Fourth, we note, as the Supreme Court did with Part 727 in *Mullins*, that the BRB has consistently utilized the true doubt rule in Section 718 claims where there was equally probative, but conflicting X-ray evidence as a way to follow the general mandate of the Act. *See, e.g., Wilt v. Wolverine Mining Co.*, 14 Black Lung Rep. (MB) 1–70, 1–76 (Ben.Rev. Bd. June 29, 1990); *Clark v. Karst–Robbins Coal Co.*, 12 Black Lung Rep. (MB) 1–149, 1–153 to 1–154 (Ben.Rev.Bd. Apr. 28, 1989).

Fifth, we note that various circuits have permitted the use of the true doubt rule in Section 718 cases. *See, e.g., Adkins v. Director, OWCP*, 958 F.2d 49, 52 n. 4 (4th Cir.1992) ("Equally probative evidence creates a 'true doubt,' which must be resolved in favor of the miner."); *Hansen v. Director, OWCP*, 984 F.2d 364, 369 (10th Cir.1993) (" 'true doubt' rule applies where equally probative but contradictory medical documentation exists"); *but see Greenwich Collieries v. Director, OWCP*, 990 F.2d 730, 736 (3d Cir. 1993) (the true doubt rule "contravenes *Mullins*," and "is contrary to Supreme Court precedent, the regulations under the Act, and the APA because: (1) the claimant bears the ultimate burden of persuasion on the ultimate facts entitling him to benefits under the Act; (2) the APA and the Supreme Court have defined the ultimate burden of persuasion as a preponderance of the evidence; and (3) the true doubt rule would allow a claimant to prevail despite failing to prove entitlement by a preponderance of the evidence"). This circuit has also willingly permitted the use of the true doubt rule. *See, e.g., Reynolds v. Director, OWCP*, No. 89–3431, 1990 WL 92668, at *3, 1990 U.S.App. LEXIS 10898, at *7 (6th Cir. June 27, 1990) [907 F.2d 151 (table)] ("If the ALJ finds that contrary interpretations of the same X ray by two B-readers are of equal probative value, the benefit of the doubt shall be resolved in the claimant's favor.").

*should be compensated, will be compensated. In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors.*
. . . .

S.Rep. No. 92–743, 92d Cong., 2d Sess. (1972); 1972 U.S.Code Cong. & Ad.News pp. 2305–07, 2312–15. (Emphasis added.)
*Id.* (emphasis in original).

While Section 718.403 places the burden of proving pneumoconiosis by the preponderance of the evidence on the claimant, the overarching concern and goal of the Black Lung Benefits Act, which requires that doubts be resolved in favor of the claimant, leads us to hold that the APA and Section 718.403 are not violated when the true doubt rule is utilized to have equally probative but conflicting evidence weighed in favor of the claimant.

### C.

■ Notwithstanding the validity of the true doubt rule, Consolidation argues that the rule is inapplicable to this case because the evidence which shows the existence of pneumoconiosis is not equally probative but conflicting.

We find that this is a case where the evidence is equally probative but conflicting—several B-readers [9] and/or Board–Certified Radiologists found pneumoconiosis; others did not. Of the more recent X rays, there was also a conflict between negative and positive readings. The ALJ considered the conflicting X-ray evidence and the qualifications of the physicians interpreting the X rays, accorded greater weight to the most recent X ray evidence, and permissibly found that true doubt existed on the issue of the existence of pneumoconiosis. The ALJ then resolved the issue in favor of Skukan. Substantial evidence supports the ALJ's decision to resolve the issue in favor of Skukan.

### D.

■ Consolidation also requests that this court remand this matter to the BRB for consideration of Consolidation's argument that the ALJ erred in weighing the evidence concerning the existence of a disabling pulmonary impairment under Section 718.204(c). Consolidation raised this argument before the BRB; however, the BRB did not address this issue because it ultimately found in favor of Consolidation.

We find that it would be useless to remand this issue to the BRB for it to discuss the ALJ's weighing of Skukan's pulmonary im-

pairment. Based on our review of the record, substantial evidence supports the ALJ's finding that Skukan had a disabling pulmonary impairment. As noted by the ALJ, there is overwhelming evidence that Skukan is totally disabled based on Section 718.-204(c)(4). Several doctors—Connelly and Levine in particular—diagnosed that, in their reasoned judgment and based on their analyses of the required tests and examinations, Skukan suffers from a totally disabling respiratory impairment.

### V.

For the foregoing reasons, we reverse the BRB's decision and order that benefits be awarded to Skukan. In addition, we find that the true doubt rule is not violative of the regulations or the APA.

_____

**9.** " ' "B" readers are radiologists who have demonstrated their proficiency in assessing and classifying X-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health & Human Services.' " *Mullins,* 484 U.S. at 145, 108 S.Ct. at 433 (quoting *Consolidation Coal Co. v. Chubb,* 741 F.2d 968, 971 n. 2 (7th Cir.1984)).