## FREEMAN UNITED COAL MINING COMPANY, Petitioner,

### v.

## OFFICE OF WORKERS' COMPENSATION PROGRAM and Fairy Dell Jones, widow of Donald L. Jones, Respondents.

### No. 92–1992.

United States Court of Appeals, Seventh Circuit.

Aug. 4, 1993.

Louis D. Bernstein, Paul W. Carroll (argued), Gould & Ratner, Chicago, IL, for Freeman United Coal Min. Co.

Barbara J. Johnson, Christian P. Barber (argued), Dept. of Labor, Office of the Sol., Louis W. Rogers, Dept. of Labor, Office of Workers' Compensation Program, Washington, DC for Office of Workers Compensation Programs.

Harold B. Culley, Jr., Raleigh, IL (argued), for Fairy Dell Jones.

Donald S. Shire, Sol. Gen., Department of Labor, Office of the Sol., Washington, DC, John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, IL, Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, for Benefits Review Bd.

Mark E. Solomons, Laura M. Klaus, Arter & Hadden, Harold P. Quinn, National Coal Ass'n, Washington, DC, for National Coal Ass'n, amicus curiae.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

## ON PETITION FOR REHEARING

### PER CURIAM.

Petitioner filed a petition for rehearing and suggestion of rehearing in banc on April 5, 1993. No judge in regular active service has requested a vote on the suggestion of rehearing in banc, and all of the judges on the panel have voted to deny rehearing. The petition for rehearing is therefore DENIED.

Statement of EASTERBROOK, Circuit Judge, with whom POSNER, Circuit Judge, joins, respecting the suggestion of rehearing in banc.

The federal government has directed a coal mine operator to pay a substantial sum to the widow of a deceased miner, even though neither the administrative law judge nor the Benefits Review Board was willing to say that a preponderance of the evidence establishes that the miner suffered from pneumoconiosis. Declaring the evidence balanced, the ALJ and BRB applied the Board's "true doubt rule," under which claimants prevail in all close cases. The rule functions as a presumption of black lung disease, which the employer may rebut only by mustering a preponderance of the evidence to show that a claimant does not have pneumoconiosis. A panel of this court held that the true doubt rule is consistent with both the Black Lung Benefits Act and the Administrative Procedure Act. 988 F.2d 706 (1993). Other courts of appeals have reached the same conclusion. E.g., *Skukan v. Consolidation Coal Co.*, 993 F.2d 1228 (6th Cir.1993) (concluding that the ALJ and BRB erred in *not* applying the true doubt rule to award benefits); *Adkins v. Director, OWCP*, 958 F.2d 49, 52 n. 4 (4th Cir.1992). But the third circuit has held that the true doubt rule is neither appropriate under the Black Lung Benefits Act nor permissible under § 7(c) of the APA, 5 U.S.C. § 556(d). *Greenwich Collieries v. Director, OWCP*, 990 F.2d 730 (1993) (Black Lung Benefits Act); *Maher Terminals, Inc. v. Director, OWCP*, 992 F.2d 1277 (1993) (APA). Both *Greenwich* and *Maher* disagreed with our panel's disposition of this case, while *Skukan* found the panel's opinion persuasive.

Decision according to the preponderance of the evidence is the norm in civil litigation, including administrative adjudication under the APA. *Steadman v. SEC*, 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981). When the evidence is in equipoise, the party needing to establish a proposition loses. The Supreme Court recently used this standard in a black lung case, stating that applicable regulations require no less. *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 158–60, 108

S.Ct. 427, 439–41, 98 L.Ed.2d 450 (1987). The Black Lung Benefits Act is a humanitarian statute, containing a slew of presumptions favorable to claimants. To obtain the benefit of these presumptions, however, the miner must establish that he suffers from coal workers' pneumoconiosis. "[I]f a miner is not actually suffering from the type of ailment with which Congress was concerned, there is no justification for presuming that that miner is entitled to benefits." *Id.* at 158, 108 S.Ct. at 439.

According to our panel, the true doubt rule "derives from a Senate Report accompanying the 1972 amendments to the black lung program which noted that the Act 'is intended to be a remedial law.... In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors.' " S.Rep. 92–743, 92d Cong., 2d Sess. (1972), quoted in 988 F.2d at 710. Of course, rules of law do not come from legislative reports. They come from statutes. Legislative history may on occasion be useful in interpreting ambiguous statutory language, but neither the panel nor the BRB identified any text that this snippet might help decode. See *Lincoln v. Vigil,* —— U.S. ——, —— – ——, 113 S.Ct. 2024, 2031–32, 124 L.Ed.2d 101 (1993) (legislative history divorced from statutory text has no significance); *Puerto Rico Department of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988) (same). The Committee Report stated the philosophy of the legislation, explaining why Congress chose to use presumptions. One presumption adopted at the time is that anyone who worked in the mines for 10 years and had a respiratory disease was afflicted with pneumoconiosis. See *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (describing the elaborate presumptions in the 1972 amendments). Another presumption, still in the statute, is that complicated pneumoconiosis is totally disabling. 30 U.S.C. § 921(c)(3). These and other presumptions made the program so generous to miners that Congress retrenched; claims filed after January 1, 1982, must satisfy a higher standard. *Pitt-*

*ston Coal Group v. Sebben,* 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988), and *Pauley v. Bethenergy Mines, Inc.,* —— U.S. ——, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991), describe many of these changes.

Knowing that Congress meant to be generous with mine operators' money does not tell us *how* generous. Legislative history frequently points in a direction, but to carry out the statute we must identify not only the direction but also the distance. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States,* 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (emphasis in original); *Pension Benefit Guaranty Corp. v. LTV Corp.,* 496 U.S. 633, 646–47, 110 S.Ct. 2668, 2675–76, 110 L.Ed.2d 579 (1990) (quoting *Rodriguez*). See also *Board of Governors v. Dimension Financial Corp.,* 474 U.S. 361, 374, 106 S.Ct. 681, 689, 88 L.Ed.2d 691 (1986); *NAACP v. American Family Mutual Insurance Co.,* 978 F.2d 287, 298 (7th Cir.1992); *In re Erickson,* 815 F.2d 1090, 1094 (7th Cir.1987). To find rules of law we must consult the statutory text. The Black Lung Benefits Act contains many substantive and evidentiary rules favorable to claimants, but no true doubt rule or any facsimile. To deploy such a rule on the basis of legislative benevolence that also accounts for the statutory presumptions is to count the magnanimous impulse twice. Tilting the burdens in miners' favor is especially questionable for claims filed in 1982 and later, for the potent presumptions that the Senate Report of 1972 sought to justify have vanished. The Benefits Review Board announced in 1978 that a true doubt rule would be employed to decide black lung cases, *Provance v. United States Steel Corp.,* 1 Black Lung Rep. 1–483 (BRB 1978), but did not use it often for pre–1982 claims. See *Mullins,* 484 U.S. at 163 n. 2, 108 S.Ct. at 442 n. 2

(Marshall, J., dissenting) ("The Director has failed to bring to our attention . . . [even] one instance in which the true-doubt rule actually has been applied by an ALJ in evaluating a miner's claim."). In recent years the rule has become ubiquitous and has on occasion been applied to pre–1982 claims, as in this case. Can it be that the Board has set out to strengthen the presumptions for pre–1982 claims and to re-create them for later ones, overriding the contrary judgment of Congress?

*Mullins* offered the Supreme Court an opportunity to decide whether the true doubt rule comports with the APA and the Black Lung Benefits Act. The Court ducked. 484 U.S. at 161 n. 35, 108 S.Ct. at 441 n. 35. Although some of the Court's cases, such as *Steadman,* say that § 7(c) of the APA creates a preponderance standard, other cases, such as *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 403 n. 7, 103 S.Ct. 2469, 2475 n. 7, 76 L.Ed.2d 667 (1983), say that an agency may change the assignment of burdens on at least some issues in a case. Cf. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Nothing our court could do would resolve the tension in the Supreme Court's opinions or end the appellate discord about the true doubt rule. Problems of our own making should be cleared up locally. When our panel's decision is but a symptom of a more widespread problem, however, we should let the case proceed to the only tribunal that can supply the cure. I have accordingly not called for a vote on the suggestion of rehearing in banc.