**Jesse ADAMS, Petitioner,**

v.

**DIRECTOR, OWCP, Respondent.**

**No. 88–3946.**

United States Court of Appeals, Sixth Circuit.

Argued May 25, 1989.

Decided Sept. 29, 1989.

Jack N. VanStone (argued), VanStone & Krochta, Evansville, Ind., for Jesse H. Adams, petitioner.

Michael J. Denney, Rae Ellen Frank James, and Michael J. Rutledge (argued), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for Director, OWCP, respondent.

Before MILBURN, Circuit Judge, and CELEBREZZE, Senior Circuit Judge, and BERTELSMAN, District Judge.*

CELEBREZZE, Senior Circuit Judge.

■ Claimant Jesse Adams petitions this court to review a final order of the Benefits Review Board (BRB or Board) denying his claim for benefits under the Black Lung Benefits Act (Act), 30 U.S.C. §§ 901–945 (1982).[1] Claimant Adams argues that the BRB erred in requiring him to prove that his pneumoconiosis "in and of itself" or "standing alone" caused his totally disabling respiratory or pulmonary impairment. We agree with Adams that application of the Board's standard to a claim such as his, in which the miner has established the existence of employment-related pneumoconiosis and a totally disabling respiratory impairment, is an unduly restrictive reading of the statutory and regulatory language "total disability due to pneumoconiosis" and is thus inconsistent with the beneficial purposes of the Act. Accordingly, we grant the petition for review and reverse the BRB's order.

Adams filed the instant claim for benefits on July 9, 1982.[2] A hearing was held before an Administrative Law Judge (ALJ) on March 7, 1985. The record discloses that Adams was a miner in underground coal mines for twelve years and two and one-half months between 1943 and 1961. From 1962 until 1969, Adams was employed as a mechanic and a welder in a stone quarry, and between 1969 and 1979, he was self-employed as a mechanic and welder. In both of these non-mining occupations, Adams was exposed to noxious arc-welding fumes. In addition, Adams had a long-standing habit of cigarette smoking.

Mr. Adams' respiratory problems first surfaced in 1972. The evidence heard by the ALJ indicated that Adams' respiratory disease had worsened since its onset. Adams would become short of breath upon exertion, and he suffered from morning cough. Adams was also afflicted with heart problems and an ulcerated stomach, both of which had resulted in hospital stays and surgery.

Although the medical evidence presented to the ALJ was to a certain extent conflicting, Adams clearly established by x-ray that pneumoconiosis had invaded his lungs, see 20 C.F.R. § 718.202(a)(1), and the Director has accordingly conceded the existence of the disease. Because Adams suffered from pneumoconiosis and had more than ten years of coal mine employment, he was also entitled to the presumption that his pneumoconiosis arose out of his coal mine employment. See id. § 718.203(b). This presumption went unrebutted.[3] In addition, the ALJ found that the qualifying results of a pulmonary function test established that Adams suffered from a totally disabling respiratory or pulmonary impairment. See id. § 718.204(c)(1).

Despite the confluence of these facts establishing a totally disabling lung disease

* Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. This appeal was originally brought by Adams in the United States Court of Appeals for the Seventh Circuit. Since Adams' coal mine employment occurred solely within the Sixth Circuit in the Commonwealth of Kentucky, however, the Seventh Circuit transferred the case to this court pursuant to 28 U.S.C. § 1631. See Danko v. Director, OWCP, 846 F.2d 366 (6th Cir.1988).

2. A prior claim for benefits that was administratively denied and became final in May of 1981 is not at issue on this petition for review.

3. Actually, the ALJ held that the presumption had been rebutted on the strength of Adams' smoking history and exposure to welding fumes. The BRB's decision, however, specifically avoided this ground for affirmance. Before this court, the Director now concedes that the ALJ's holding on the rebuttal issue was erroneous, and that the record will not support a finding that Adams' pneumoconiosis did not arise "at least in part" out of his coal mine employment. 20 C.F.R. § 718.203(a).

and pneumoconiosis arising from coal mine employment, the ALJ denied benefits under the Act. Assessing the medical opinions of record, the ALJ concluded that Adams had failed to establish the requisite causal link between his pneumoconiosis and his total disability: "The record contains no medical evidence that affirmatively establishes that Claimant's total disability was *due to* pneumoconiosis *standing alone*" (emphasis added). On appeal, the BRB held that its prior decision in *Wilburn v. Director, OWCP*, 11 Black Lung Rep. 1–135 (B.R.B. 1988), dictated that the claimant must prove his pneumoconiosis was "in and of itself" totally disabling. The Board concluded that the ALJ's "standing alone" formulation was equivalent to the "in and of itself" standard, and upon finding the ALJ's conclusion supported by substantial evidence, the BRB affirmed. This timely petition for review ensued.

■ Since Adams' claim was filed after March 31, 1980, it was properly evaluated by the ALJ and the BRB under the Secretary of Labor's permanent regulations found at 20 C.F.R. Part 718. *See Tennessee Consolidated Coal Co. v. Crisp*, 866 F.2d 179 (6th Cir.1989); 20 C.F.R. § 718.2. Under Part 718, the miner must prove three facts in order to receive Black Lung Benefits: (1) that he suffers from pneumoconiosis; (2) that his pneumoconiosis arose at least in part out of his coal mine employment; and (3) that he is totally disabled by pneumoconiosis. *See Director, OWCP v. Mangifest*, 826 F.2d 1318, 1320 (3d Cir. 1987); 20 C.F.R. §§ 718.2, 718.202, 718.203, 718.204; *see also Strike v. Director, OWCP*, 817 F.2d 395, 399 (7th Cir.1987). The claimant bears the burden of proving each of these elements of his claim by a preponderance of the evidence, except insofar as he is aided by a presumption. *See* 20 C.F.R. § 718.403; *Mangifest*, 826 F.2d at 1320; *see also* 20 C.F.R. §§ 718.203(b), 718.302–.306 (presumptions).

In the instant claim, it is undisputed that Adams has pneumoconiosis, *id.* § 718.202(a)(1), that his pneumoconiosis arose from his twelve years of coal mine employment, *id.* § 718.203, and that he suf-

fers from a totally disabling respiratory impairment, *id.* § 718.204(c). The only issue in dispute on this petition to review, therefore, is whether Adams is totally disabled "due to" pneumoconiosis. More specifically, the narrow question presented concerns the degree of causation necessary when the claimant has established his pneumoconiosis by x-ray (but has been unable to invoke the irrebuttable presumption of section 718.304) and has also shown the existence of a totally disabling respiratory disease by medical evidence under section 718.204(c) (but has not qualified for the rebuttable presumption in section 718.305 because of less than fifteen years coal mine employment).

This inquiry is mandated by the statutory requirement that the miner is entitled to benefits only if he is "totally disabled due to pneumoconiosis." 30 U.S.C. 901(a). This requirement is reiterated in the specific regulatory language under review:

> Except as provided in § 718.305, proof that the miner suffers or suffered from a totally disabling respiratory impairment as defined in paragraphs (c)(1), (2), (4) and (5) of this section shall not, by itself, be sufficient to establish that the miner's impairment is or was *due to* pneumoconiosis.

20 C.F.R. § 718.204(c)(5) (emphasis added). As we noted in *Zimmerman v. Director, OWCP*, 871 F.2d 564 (6th Cir.1989), this requirement that the total disability arise from pneumoconiosis, and not just any respiratory or pulmonary impairment, is "implicit in the entire scheme enacted by Congress." *Id.* at 566. Our decision in *Zimmerman*, however, did not purport to answer the question posed by the instant case.

The Director argues that, as a general matter, two avenues are open for a claimant to establish total disability "due to" pneumoconiosis when the statutory presumptions are not available. First, in the absence of x-ray evidence (or other qualifying evidence under section 718.202) indicating that the miner suffers from "clinical" pneumoconiosis, the Director asserts that the causation requirement would be satis-

fied only if the claimant's totally disabling respiratory disease (as found under section 718.204(c)) is shown to be "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201. Under these circumstances, in the Director's view, the miner's entire lung disease is "legal" pneumoconiosis under the regulations, and his totally disabling respiratory impairment must therefore be considered "due to" his pneumoconiosis. *See id.* § 718.204(b) ("a miner shall be considered totally disabled if *pneumoconiosis as defined in § 718.201* prevents ... the miner" from engaging in his coal mine work or comparable, gainful employment). This case does not provide us with a direct opportunity to review this interpretation.

The Director also recognizes a second method for a claimant to prove causation, which is at issue here: a miner who is totally disabled by respiratory disease, and who has established the existence of "clinical" pneumoconiosis by x-ray, may prove the requisite causal nexus between the two by competent medical evidence. The Department of Labor regulations, however, nowhere define the circumstances under which such a living miner's totally disabling lung disease will be considered "due to" pneumoconiosis under the Act and section 718.204(c)(5). *Compare* 20 C.F.R. § 718.205(b) & (c) ("due to pneumoconiosis" defined in context of survivors' claims). To make up for this deficiency, the Director asserts, as the BRB held, that the language "total disability due to pneumoconiosis" requires "unequivocally" that the claimant's pneumoconiosis be totally disabling "in and of itself", which appears to be the equivalent of the traditional "but for" causation test.

The causation standard embodied in the term "due to", however, is not susceptible to such easy interpretation. As the Department of Labor stated in promulgating regulations explaining the requirement of "death due to pneumoconiosis" for survivors' claims cited above:

> The words do not speak clearly and unambiguously for themselves. The causal nexus of "due to" has been given a broad

variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other.

48 Fed.Reg. 24,276 (May 31, 1983). Given this obvious ambiguity in the "due to" language, it is somewhat surprising for the Director now to argue that its meaning is unequivocal. Since the Director cites us to little regulatory or statutory support for his restrictive interpretation of "due to", however, his reliance on this rhetorical flourish is perhaps understandable.

In defense of the Board's holding that Adams must show that his pneumoconiosis is "in and of itself" totally disabling, the Director principally relies on the provision in section 718.204(b) that a claimant must prove he is disabled by "pneumoconiosis as defined in § 718.201." Section 718.201 is entitled "Definition of pneumoconiosis" and states in full:

> For purposes of the Act, "pneumoconiosis" means any chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthrocosilicosis, anthrocosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

20 C.F.R. 718.201. The Director argues that when section 718.204 is read in conjunction with section 718.201, and especially its third and final sentence, the Board's conclusion that a claimant's pneumoconiosis must be totally disabling in and of itself before benefits will be granted readily follows.

In our view, however, these regulations will not support the construction that the Director thrusts upon them. Neither sec-

tion 718.204 nor section 718.201 mentions the degree of causation required to prove "total disability due to pneumoconiosis." Indeed, the terms of section 718.201 do not refer to that relationship at all, but instead purport to describe when a miner's pneumoconiosis will be considered to "arise from" his coal mine employment, a separate issue under the Act and the regulations. *See Mangifest*, 826 F.2d at 1320; 20 C.F.R. 718.203. The Director has not explained to our satisfaction how this definitional language, which speaks to a distinct causation requirement, can be interpreted to require that a claimant's total disability be due to pneumoconiosis in and of itself. Such a construction is certainly not obvious from the regulatory language. Rather, section 718.204(b) requires only that the claimant must suffer from "pneumoconiosis as defined in section 718.201", and we conclude that Adams has satisfied this standard.

The Director asserts that his proposed enhanced causation standard follows from the requirement in the third sentence of section 718.201, which states: "For purposes of this definition, a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." This court has previously rejected the Director's contention, however, that the definition in section 718.201 imposes a greater burden of proof on a claimant who has established "clinical" pneumoconiosis that arose at least in part from his coal mine employment under section 718.203. *See Southard v. Director, OWCP*, 732 F.2d 66, 70–72 (6th Cir.1984). We are not disposed to effectively overrule our *Southard* decision under the guise of interpreting the "due to" language in the Act and the regulations, especially in view of the fact that section 718.201 makes no reference to this causal relationship. In our view, *Southard*

makes clear that when a claimant establishes "clinical" pneumoconiosis, 20 C.F.R. § 718.202, that arises from his coal mine employment, *id.* § 718.203, he has satisfied the second sentence of section 718.201 ("This definition includes ... coal workers' pneumoconiosis ... arising out of coal mine employment."), and no more is required of him. Because the Director concedes that Adams has made these factual showings, we conclude that Adams has satisfied the regulatory definition of pneumoconiosis.

Moreover, we are not persuaded by the Director's contention that the third sentence of section 718.201 modifies the second sentence by imposing an enhanced causation standard on it, a contention we implicitly rejected in *Southard;* the regulatory language again will not bear such a construction. The second sentence in section 718.201 states that the definition of pneumoconiosis "includes, but is not limited to" certain named diseases that arise from mine employment. The third sentence then goes on to state more generally that "a disease 'arising out of coal mine employment' *includes*" other unnamed chronic lung diseases that are significantly related to coal mine employment. If the third sentence had been intended to restrict the scope of the second sentence, however, that result could have been easily and clearly accomplished by substituting the phrase "is limited to" for the word "includes" in the third sentence. Since the limiting language was omitted and the third sentence was instead drafted in an inclusionary manner, we do not accept the Director's attempt to read the limiting language into the regulation. Rather, we understand the third sentence to be explanatory in nature in that it sets forth the circumstances under which a lung disease *not* specifically mentioned in the second sentence will satisfy—*i.e.*, will be "include[d]" in—the definition of pneumoconiosis.[4] The third sen-

---

**4.** We note that this analysis does not read the third sentence of section 718.201 out of the regulatory framework. As set forth above, the Director explicitly relies on that provision to define the requisite causal nexus between total

disability and pneumoconiosis when the claimant is unable to establish "clinical" pneumoconiosis under section 718.202. The discussion in the text concerning the relationship between the second and third sentences of the regulation

tence of section 718.201, therefore, complements the second sentence, but in no way limits it. Thus, as we effectively held in *Southard,* when a miner establishes that he has pneumoconiosis (or one of the other diseases listed in the second sentence), he need only establish that his pneumoconiosis arose out of his coal mine employment (as defined under section 718.203) to meet the definition in section 718.201.[5] Since Adams has clearly done so, the definition in section 718.201 does not stand as an impediment to his receiving benefits.

Since we find that Adams has established the existence of pneumoconiosis as defined in section 718.201, the Director's argument thus devolves to the bare language of section 718.204, which alternatively states that the miner must be totally disabled "due to" pneumoconiosis, 20 C.F.R. § 718.204(a) & (c)(5), and that his pneumoconiosis must "prevent[ ]" the miner from performing coal mine work or comparable and gainful employment, *id.* § 718.204(b). In our view, however, the term "prevent" is no less ambiguous than the "due to" language, but we note that both terms derive from the Act itself. *See* 30 U.S.C. § 901 ("due to");

*id.* § 902(f)(1)(A) ("prevents"). If, as the Director argues, these statutory terms mandate that a claimant's pneumoconiosis be totally disabling in and of itself before benefits are due under the Act, we would expect that the regulations and case law arising under the other sets of Black Lung regulations would have received a parallel interpretation reflecting this "unequivocal" congressional intent. Again, however, we do not find support for the Director's restrictive view of the required causal nexus.

The original regulations promulgated by the Secretary of Health, Education and Welfare (now Health and Human Services), for example, required the claimant to prove only that "his pneumoconiosis is ... the *primary* reason for his inability to engage in ... comparable and gainful work." 20 C.F.R. § 410.426(a); *see Garcia v. Director, OWCP,* 869 F.2d 1413, 1416 (10th Cir.1989); *Gastineau v. Mathews,* 577 F.2d 356, 358, 359 (6th Cir.1978). In *Peabody Coal Co. v. Benefits Review Board,* 560 F.2d 797 (7th Cir.1977), the Seventh Circuit resorted to a dictionary definition and held that "a primary reason is one which is first

comes into play, however, only when the claimant is able to establish the existence of pneumoconiosis, or one of the other named diseases, as provided in the regulations. Application of the third sentence in section 718.201, therefore, would be retained in those cases in which "clinical" pneumoconiosis is not established, which is precisely the construction of the regulation we have set forth in the text.

In addition, we believe that this remaining application of the third sentence of section 718.201 is not precluded by our prior decision in *Southard.* Although some of the language in *Southard* could be read to suggest that a miner should never have to make a causation showing greater than that required by section 718.203, which would effectively nullify the language in the third sentence of section 718.201, it must be remembered that the claimant in *Southard* established the existence of pneumoconiosis by x-ray, just as Adams did in this case. *See Southard,* 732 F.2d at 70. It would be a mistake, we believe, to apply *Southard* outside of this context, because section 718.203 specifically requires that a miner be suffering from pneumoconiosis before its provisions are available. Thus, where a miner has failed to establish "clinical" pneumoconiosis or its equivalent by presumption, the Director's alternative causation theory is still viable.

5. The view we take of the definition of pneumoconiosis in section 718.201 is consistent with the

view we recently expressed in dicta concerning the parallel provision under 20 C.F.R. Part 727. *See Tennessee Consolidated Coal Co. v. Crisp,* 866 F.2d 179, 187 n. 5 (6th Cir.1989). In *Crisp,* we opined that rebuttal could be accomplished under section 727.203(b)(4), which permits rebuttal if the claimant did not have pneumoconiosis, if the employer could show that the claimant's respiratory impairment was not significantly related to coal dust exposure, as required by the third sentence in the parallel definition at section 727.202. *See id.* That statement, however, arose in a case in which the miner was not shown to be suffering from clinical pneumoconiosis (the presumption was invoked by qualifying ventilatory studies under section 727.203(a)(2), not by x-ray evidence), so the second sentence of the definition was not relevant and was indeed not mentioned in the discussion. Thus, as we hold in the instant case, the court in *Crisp* concluded that the third sentence of the definition was potentially applicable to a case in the absence of x-ray evidence of pneumoconiosis. *Cf. Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 108 S.Ct. 427, 435, 98 L.Ed.2d 450 (1987) (noting that (b)(4) rebuttal is unavailable where the claimant invokes the presumption by x-ray evidence under (a)(1)); *id.* 108 S.Ct. at 443–44 (Marshall, J., dissenting) (same).

in degree or importance, or one which is fundamental or basic." *Id.* at 801. The court then went on to hold this standard satisfied by an ALJ's conclusion that "pneumoconiosis is the operative cause, in whole or in part, of the claimant's totally disabling respiratory condition." *Id.*[6] As this case and the dictionary definition reveal, the "primary reason" standard is clearly a lesser requirement than the "in and of itself" formulation sought by the Director here; more importantly, the existence of this lesser standard undermines the Director's contention that the stricter "in and of itself" test is mandated by the terms of the Act.

A similar lesson can be drawn from the treatment given to the Department of Labor's interim regulations found at 20 C.F.R. Part 727. Under section 727.203, a claimant with ten years of coal mine employment may be presumed totally disabled due to pneumoconiosis upon satisfying one of several medical criteria, *id.* § 727.203(a), and the responsible operator is then afforded the opportunity to rebut the presumption, *id.* § 727.203(b). One of the rebuttal provisions states that the miner will not be entitled to benefits if his "total disability or death ... did not arise in whole or in part out of coal mine employment." *Id.* § 727.203(b)(3). Following the BRB's lead, and at the behest of the Director, we have repeatedly interpreted this provision (contrary to its express terms) as allowing rebuttal if the employer established that the miner's disability was not caused, in whole or *in part*, by pneumoconiosis. Thus, in *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112 (6th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985), we held:

> If an employer is able to prove that pneumoconiosis played no part in causing the miner's disability, then the employer has satisfied the requirement of section 727.-

203(b)(3). *Where, however, pneumoconiosis is a contributing cause to a miner's total disability, he is conclusively entitled to benefits.*

*Id.* at 1120 (emphasis added). *See also Crisp*, 866 F.2d at 184; *Wright v. Island Creek Coal Co.*, 824 F.2d 505, 508 (6th Cir.1987); *Roberts v. Benefits Review Board*, 822 F.2d 636, 638–39 (6th Cir.1987). Although we recognize that this precedent is not directly controlling here because we are not dealing with a comparable presumption, we nevertheless must conclude that it also subverts the Director's proposed interpretation of the statutory "due to" language. If the asserted but-for causation were indeed mandated by the Act, as the Director now contends, we would expect rebuttal under section 727.203 to be accomplished by a showing that the claimant's pneumoconiosis was not totally disabling in and of itself. And by the same token, if the Act requires that a miner's total disability be caused by pneumoconiosis in and of itself, then any rule permitting entitlement where only contributory causation exists would necessarily be inconsistent with the Act. Under section 727.203, however, the Board and the Director have successfully advanced a construction of the regulation that permits an award of benefits where the claimant's pneumoconiosis is merely a contributory cause of the total disability. This precedent again undermines the Director's attempt to impose the "in and of itself" test on the Act's "due to" language.

Given these prior regulatory and judicial treatments of the requirement that a miner's total disability be "due to" pneumoconiosis before he is entitled to benefits under the Act, we cannot accept the Board's and the Director's current assertion that the Act and the regulations require total disability by pneumoconiosis "in and of itself" or "standing alone".[7] We note, moreover, that the lesser standard imposed by

---

6. The *Peabody Coal* court stated that the ALJ's formulation indicated that pneumoconiosis "was, at the very least, the *major cause* of the claimant's impairment." 560 F.2d at 801 (emphasis added).

7. Additionally, we observe that the Department of Labor's regulations interpreting the requirement of "death *due* to pneumoconiosis" in the context of survivors' claims similarly permit a claimant to recover without showing that the deceased miner died from pneumoconiosis "in and of itself". *See* 20 C.F.R. 718.205.

these prior decisions is fully supported by the principles underlying the Black Lung Benefits Act.[8] This court has often repeated that the Act is remedial legislation that should be liberally construed so as to include the largest number of miners within its entitlement provisions. *See, e.g., Southard,* 732 F.2d at 71; *Haywood v. Secretary of Health & Human Services,* 699 F.2d 277, 281 n. 7 (1983); *Miniard v. Califano,* 618 F.2d 405 (6th Cir.1980); *Morris v. Matthews,* 557 F.2d 563 (6th Cir. 1977). We have also specifically noted that the difficulties faced by a miner with severely limited resources in proving causation are considerable, and that Congress enacted and subsequently amended the Act in large part to permit benefits to be awarded to miners whose entitlement under State workers' compensation laws was precluded by burdensome causation requirements. *See Southard,* 732 F.2d at 70–71. Application of the "in and of itself" formulation, however, would effectively return the miner, who is concededly suffering from pneumoconiosis and a totally disabling respiratory impairment, to the oppressive burden of proof that made the workers' compensation forum so uninviting in the first place. We conclude that this result could not have been intended by Congress, and we accordingly reject the Director's proposed causation standard.

Instead, we believe that the causation inquiry mandated by Part 718 should be guided by our aforementioned experience in interpreting the provisions of Part 727. Just as the Director and the BRB successfully argued that section 727.203(b)(3) should be construed to impose parallel causation requirements on the relationship between pneumoconiosis and coal mine employment and the relationship between total disability and pneumoconiosis, we believe that those two inquiries should also receive parallel treatment under the regulations in Part 718. We therefore hold, consistent with our prior decision in *Southard,* that in order to qualify for benefits under Part 718, a miner, who is found to suffer from pneumoconiosis under section 718.-202, must affirmatively establish only that his totally disabling respiratory impairment (as found under section 718.204(c)) was due "at least in part" to his pneumoconiosis. *Cf.* 20 C.F.R. § 718.203(a). This interpretation of the ambiguous "due to" language, we believe, is more consistent with the beneficial purposes of the Act than is the Director's proposed construction.[9]

---

**8.** We also note at this juncture that we find no evidence in the Act that might justify the application of a more severe causation requirement under the Part 718 regulations than under the regulations in Parts 727 or 410. As we pointed out in *Tennessee Consolidated Coal Co. v. Crisp,* 866 F.2d 179, 182 (6th Cir.1989), the permanent regulations in Part 718 were promulgated under the authority granted by the Black Lung Benefits Reform Act of 1977. The enabling statute, however, only stated that "the Secretary ... shall establish criteria for all appropriate medical tests under this subsection which accurately reflect total disability in coal mine employment as defined in [30 U.S.C. § 902(f)(1)(A)]." 30 U.S.C. § 902(f)(1)(D). Nothing in this grant of authority suggests that Congress intended the Secretary's regulations to revamp the causation requirements that had been utilized under the predecessor regulations. It would indeed be difficult to impute such an intention to Congress, moreover, since as we have noted on occasion, *see, e.g., Director, OWCP v. Forester,* 857 F.2d 1121, 1122 (6th Cir.1988); *Kyle v. Director, OWCP,* 819 F.2d 139, 142–43 (6th Cir. 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 566, 567, 102 L.Ed.2d 591 (1988), the 1977 Reform Act was intended to liberalize benefits under the

Act, while more rigid causation requirements could only serve to restrict benefits.

**9.** In rejecting the Director's proposed causation standard in favor of a more lenient requirement, we take an action that is not only consistent with congressional intent, but is also in accord with the regulatory framework. In particular, we note that our decision in no way infringes on, or "obviates the advantage conferred on miners" by, the presumption contained in section 718.305. *Cf. Tucker v. Director, OWCP,* 10 Black Lung Rep. 1–35, 1–41 (B.R.B.1987). That section provides a presumption of total disability due to pneumoconiosis to miners with at least fifteen years of coal mine employment upon a showing that they suffer from a totally disabling respiratory disease under section 718.104(c). *See* 20 C.F.R. § 718.305(a) & (c). The cases encompassed by the rule we announce today are considerably different in that the miner must first establish the existence of pneumoconiosis under section 718.202, a showing that is not a prerequisite to invoking the presumption in section 718.305. In addition, although we concede that the causation showing we require is not burdensome, the claimant must still adduce affirmative evidence

Applying this standard to the facts of this case, we further conclude that the only reasonable outcome is an award of benefits to Claimant Adams. As the ALJ pointed out, of the several medical reports in the record, only those of Drs. Lehman and Howard addressed the etiology of Adams' totally disabling respiratory impairment. Dr. Lehman, Adams' personal physician, in a series of reports diagnosed total disability resulting from a combination of pneumoconiosis, emphysema and chronic obstructive lung disease.[10] Dr. Howard, on the other hand, asserted that claimant's problems were in no way related to his coal mine employment. As the ALJ concluded, however, Dr. Howard's opinion was rendered under the mistaken belief that Adams was not suffering from pneumoconiosis, and the ALJ therefore properly rejected Dr. Howard's conclusion as to etiology. We are thus left with Dr. Lehman's clear conclusion that Adam's pneumoconiosis was a contributing cause to his totally disabling respiratory impairment as the only probative evidence on this question in the record.[11] Under these circumstances, we hold that Adams has satisfied his burden of showing that his total disability was "due to" pneumoconiosis, and that he should therefore be awarded Black Lung benefits under the Act and the regulations.

Accordingly, the Board's order finding Adams ineligible for benefits is REVERSED, and his claim is remanded to the Board for an award of benefits under the Act.

---

that his pneumoconiosis was a contributing cause to his total disability, and the ALJ must be convinced of this fact by a preponderance of the evidence. Thus, we have neither extended the provisions of section 718.305 to cases it should not control, nor have we grafted a new presumption into the Act and the regulations.

10. Dr. Lehman also noted that Adams suffers from severe arteriosclerosis, which contributes to his overall disability. The record does not disclose, however, that Adams' heart condition is a contributing cause to his totally disabling

impairment (as found under 20 C.F.R. § 718.204(c)), which is the only relevant relationship for purposes of our analysis here.

11. Nothing in this record suggests that Adams' pneumoconiosis has played only an infinitesimal or de minimus part in his totally disabling respiratory impairment, so we need not consider here whether such a finding, if supported by substantial evidence, would support a denial of benefits under the Act.