91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert MAGGARD, Petitioner,
v.
KARST ROBBINS COAL COMPANY; Director, Office of Workers
Compensation Programs; United States Department
of Labor, Respondents.
 No. 95-3346.
 United States Court of Appeals, Sixth Circuit.
 June 15, 1996.
 
 Before: NELSON and BATCHELDER, Circuit Judges, and McKEAGUE, District Judge.*
 PER CURIAM.
 
 
 1
 This case comes before us on a petition for review of a denial of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 et seq. Concluding that the denial of the claim was supported by substantial evidence, we shall deny the petition.
 
 
 2
 * The claimant, Robert Maggard, was a Kentucky coal miner for 11 years. He quit that line of work in February of 1986, at the age of 31, because of respiratory problems that he blames on his coal mine employment.
 
 
 3
 Mr. Maggard filed a black lung benefits claim on July 21, 1986. A hearing was held before an administrative law judge in June of 1991. The ALJ reviewed medical reports from a number of examining physicians, along with interpretations of x-ray films, pulmonary function tests, and arterial blood gas studies.
 
 
 4
 The ALJ determined that Mr. Maggard smoked a pack of cigarettes per day for eight to twelve years. The ALJ also concluded that as a child Mr. Maggard had suffered from asthma--a fact of which several of his examining physicians were not made aware.
 
 
 5
 Dr. Glen Baker, a medical expert hired by the claimant, assumed a smoking history of four years and no history of asthma. Ruling out both asthma and smoking as causative factors in Mr. Maggard's respiratory impairments, Dr. Baker made a diagnosis of category 1 pneumoconiosis.
 
 
 6
 Dr. W.F. Clarke, another medical expert hired by the claimant, also diagnosed pneumoconiosis. Dr. Clarke was "unable to find any other cause for [Mr. Maggard's] disabling dyspnea other than his work in a dusty environment." Dr. Clarke used a five-to-six-year smoking history, and he did not consider asthma as a possible cause.
 
 
 7
 The experts presented by Mr. Maggard's most recent employer, Karst Robbins Coal Company, offered conclusions that differed substantially from those of Drs. Baker and Clarke. Dr. Bruce Broudy diagnosed bronchial asthma, while Drs. William Anderson and Emery Lane each opined that Mr. Maggard's smoking was the primary cause of his pulmonary disability. Dr. Lane concluded that coal dust exposure "might cause very mild impairment but would not cause disability and certainly would not cause an obstructive defect with hyperinflation." The ALJ initially deemed this report to be somewhat supportive of Mr. Maggard's claim.
 
 
 8
 Another of the employer's experts, Dr. A. Dahhan, had examined Maggard in 1977, 1983, 1986, and June of 1991. Dr. Dahhan likewise concluded that smoking was the cause of the patient's respiratory ailments. This doctor detected no trace of pneumoconiosis or any other pulmonary disability secondary to coal mining.
 
 
 9
 One of the examining physicians retained by the Department of Labor, Dr. Ballard Wright, concluded that Mr. Maggard had "miner's asthma," with category 1 pneumoconiosis not ruled out. Dr. Wright assumed a six-year smoking history and no childhood history of asthma.
 
 
 10
 Another government expert, Dr. Cordell Williams, found moderate impairment, which he attributed to bronchial asthma. He opined that the claimant could continue to do coal mining work in a dust-free environment. The ALJ noted--incorrectly--that Dr. Williams could not rule out pneumoconiosis; Dr. Williams had, in fact, checked a box doing so and further stated, "I see no evidence of pneumoconiosis."
 
 
 11
 Finding the evidence in conflict, the ALJ initially invoked the "true doubt rule" and resolved the claim in the claimant's favor. (In Director, OWCP v. Greenwich Collieries, 114 S.Ct. 2251, 2259 (1994), the Supreme Court subsequently held the "true doubt rule" violative of § 7(c) of the Administrative Procedure Act.) Upon review of the ALJ's initial decision, the Benefits Review Board concluded that the "true doubt rule" had not been triggered, the ALJ not having found the evidence on each side to be equally probative.
 
 
 12
 The ALJ reevaluated the medical evidence on remand, giving more weight to Dr. Dahhan's testimony and less to Dr. Wright's report. The ALJ also added Dr. Williams to the list of physicians who found no coal mining-related disability, noting that Dr. Williams' report had previously been "mischaracterized." And after reexamining Dr. Lane's report, the ALJ decided that it too "comes down squarely on the employer's side." The ALJ denied Mr. Maggard's claim on September 28, 1993. The Board affirmed that decision on January 26, 1995, and Mr. Maggard filed a timely petition for review.
 
 II
 
 13
 Pneumoconiosis, for the purpose of the Black Lung Benefits Act, is defined as:
 
 
 14
 "a chronic dust disease of the lung and its sequelae ... arising out of coal mine employment.... For purposes of this definition, a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201. (Emphasis supplied.)
 
 
 15
 In order to succeed on a black lung claim, the claimant must prove, by a preponderance of the evidence: (1) that he has pneumoconiosis; (2) that the pneumoconiosis is due to his coal mine employment; (3) that he is totally disabled by a respiratory or pulmonary impairment; and (4) that pneumoconiosis caused this total disability, in whole or in part. 20 C.F.R. §§ 718.202, 718.204; Adams v. Director, OWCP, 886 F.2d 818, 820 (6th Cir.1989). The federal courts have recognized that chronic pulmonary impairments not categorized as "clinical" pneumoconiosis can satisfy the "legal" (or "regulatory") definition of pneumoconiosis when they are "significantly related to, or substantially aggravated by," coal dust exposure. See Adams, 886 F.2d at 822. "This legal definition," one court has noted, "encompasses a wider range of afflictions than does the more restrictive medical definition of pneumoconiosis." Kline v. Director, OWCP, 877 F.2d 1175, 1178-79 (3d Cir.1989); see also Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir.1995).
 
 
 16
 In the case at bar the ALJ determined that the weight of the evidence did not support a claim of clinical pneumoconiosis. Mr. Maggard does not contest that ruling here. Relying on 20 C.F.R. § 718.201, however, Mr. Maggard contends that his respiratory impairment was "substantially aggravated by" dust exposure from his coal mine employment.
 
 
 17
 The ALJ found otherwise. The ALJ's determination must be accepted here, because there was substantial evidence that coal dust exposure did not in fact aggravate Mr. Maggard's respiratory condition.
 
 
 18
 Dr. Dahhan, the claimant's doctor since 1977, answered in the affirmative when asked during his deposition whether he thought "[Mr. Maggard's] exposure to heavy concentrations of coal dust over a period of eleven years had absolutely no effect whatsoever in regard to his pulmonary disease and condition." Contrary to Mr. Maggard's argument on appeal, the testimony of this treating physician can constitute substantial evidence notwithstanding that the doctor was paid by the claimant's employer. Peabody Coal Co. v. Helms, 901 F.2d 571, 572-73 (7th Cir.1990). The testimony of Dr. Lane, who was likewise paid by the employer, is also probative in this connection.
 
 
 19
 The petition for review is DENIED.
 
 
 
 *
 The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation