**CROSS MOUNTAIN COAL, INC., Petitioner,**

v.

**Alvin WARD; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 95–3846.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1996.

Decided June 25, 1996.*

* This decision was originally issued as an "unpublished decision" filed on June 25, 1996. On August 2, 1996, the court designated the opinion as one recommended for full-text publication.

Mary Lou Smith (argued and briefed), Howe, Anderson & Steyer, Washington, DC, for Cross Mountain Coal, Inc.

John Thomas Johnson, Jr. (briefed), Robert L. Bowman (argued), Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, TN, for Alvin Ward.

Patricia Nece, Karen Blank (briefed), J. Matthew McCracken (argued), U.S. Dept. of Labor, Office of Sol., Washington, DC, for Director, Office of Workers' Compensation Programs.

Before: KENNEDY, JONES, and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

Employer Cross Mountain Coal Company, Inc., petitions for review of a decision and order of the Benefits Review Board ("BRB") affirming the decision and order of the administrative law judge ("ALJ") and the ALJ's order denying employer's motion for reconsideration. The ALJ awarded black lung benefits to claimant Alvin Ward under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901 *et seq.* On appeal, the issues are (1) whether the ALJ applied an erroneous legal standard in interpreting the causation requirement under 20 C.F.R. § 718.204(c), and (2) whether the ALJ improperly allocated the burden of proof in finding that claimant was totally disabled due to pneumoconiosis.

I.

Claimant Alvin Ward was born on February 16, 1951, and was 43–years–old at the time of the hearing before the ALJ. He completed his formal education through the seventh grade. Claimant worked in qualifying coal mine employment for 17 and one-third years. He testified that his last employer was Cross Mountain Coal and that his last job classification was miner's helper, which involved taking care of the miner's cable. Claimant described this job as heavy labor involving "pretty strenuous work." Claimant also testified that he began experiencing breathing problems in 1985 or 1986, but that he continued to work in the mines until July 28, 1988. On that date, he suffered a serious back injury, and since then, he has not been employed.

The record contains a total of four interpretations of two different chest x-rays, the results of two pulmonary function studies, and the results of three arterial blood gas studies. The record also contains the medical opinions of two different doctors: Dr. A.R. Hudson, who examined claimant at the request of the Department of Labor, and Dr. Glen Baker, who examined claimant at his own request.

Dr. Hudson examined claimant on May 27, 1992. Based upon a chest x-ray, pulmonary function studies, arterial blood gas studies,

an EKG, a history of 20 years of coal mine employment, and a history of smoking one pack of cigarettes per day from the age of 17, Dr. Hudson diagnosed simple coal workers' pneumoconiosis, chronic obstructive bronchitis, and possible coronary artery disease. Dr. Hudson also stated that claimant's obstructive lung disease was due to some combination of smoking and coal dust exposure; however, Dr. Hudson indicated that he was unable to assign an amount of damage to each agent. Dr. Hudson also stated that on the basis of his pulmonary impairment, claimant's work capacity was limited to light work. Dr. Hudson also indicated (1) that claimant should be capable of foreman's work, and (2) that he anticipated that claimant's pulmonary capacity was actually greater than demonstrated in the pulmonary function studies.

In a deposition taken on December 14, 1992, Dr. Hudson testified that claimant's history of cigarette smoking was sufficient, in and of itself, to cause both his respiratory complaints and the impairment indicated by the pulmonary function studies. Dr. Hudson also stated that it was impossible for him to tell how much of claimant's objective lung disease was due to his smoking and how much was due to his coal dust exposure. Specifically, Dr. Hudson stated that "the [objective lung disease] could have been a hundred percent [due to] smoking, zero percent coal dust or vice versa."

Claimant was examined on February 3, 1993, by Dr. Baker. Based upon a chest x-ray, pulmonary function studies, arterial blood gas studies, a history of 19 years' employment in underground coal mining, and a history of smoking one pack of cigarettes per day for 17 to 18 years, Dr. Baker diagnosed coal workers' pneumoconiosis, category 2/1; chronic obstructive airway disease with mild obstructive defect; and bronchitis. Dr. Baker also stated that the "[e]tiology of the [claimant's] impairment is due to his combined dust exposure, coal worker's pneumoconiosis as well as his cigarette smoking history." Dr. Baker further indicated that from a pulmonary standpoint, claimant was unable to perform his usual coal mine employment or comparable and gainful work in a dust free environment. Specifically, Dr. Baker stated:

[Claimant] should have no further exposure to coal dust, rock dust or similar noxious agents due to his advanced coal workers' pneumoconiosis, chronic obstructive airway disease and bronchitis. He would have difficulty doing sustained manual labor, on an 8 hour basis, even in a dust-free environment, due to these conditions.

Claimant Ward filed his claim for benefits under the Act on April 9, 1992. Since his claim was filed after March 31, 1980, the regulations at 20 C.F.R. Part 718 are applicable to his claim. Subsequently, the Department of Labor notified employer Cross Mountain Coal that it had been identified as the responsible operator, which made it potentially liable for the payment of benefits. On October 21, 1992, employer was informed by the Department of Labor that it was entitled to develop its own medical evidence; however, employer did not request that claimant undergo a physical examination. On April 6, 1993, the Department of Labor again denied the claim. Subsequently, claimant requested a formal hearing before an ALJ.

The formal hearing was held on May 25, 1994. On October 7, 1994, the ALJ issued a decision and order awarding benefits. The ALJ adjudicated the claim under the entitlement criteria at 20 C.F.R. Part 718. He found that pneumoconiosis was established under 20 C.F.R. § 718.202(a)(1) by the chest x-rays and under 20 C.F.R. § 718.202(a)(4) by the opinions of Drs. Hudson and Baker. In addition, because the ALJ had credited claimant with 17 and one-third years of coal mine employment, claimant was entitled to a rebuttable presumption under 20 C.F.R. § 718.203(b) that his pneumoconiosis arose out of his coal mine employment. The ALJ found that the presumption was not rebutted, because the evidence did "not suggest any alternative etiology for the pneumoconiosis."

Furthermore, under section 718.204(c)(4), the ALJ found that the opinions of Drs. Hudson and Baker established that claimant lacked the pulmonary capacity to return to his usual coal mine work, which required

heavy labor. Applying the standard set forth in *Adams v. Director, OWCP*, 886 F.2d 818 (6th Cir.1989), which requires a claimant to prove that his disability arises at least in part from his pneumoconiosis, *id.* at 825, the ALJ found that the opinions of Drs. Hudson and Baker were sufficient to establish that claimant was totally disabled due to pneumoconiosis under 20 C.F.R. § 718.204(c)(4).

Thereafter, employer requested that the ALJ reconsider his decision on the ground that claimant is not totally disabled by a respiratory impairment that was caused by pneumoconiosis. In an order denying employer's motion for reconsideration issued on November 9, 1994, the ALJ affirmed his decision and order awarding benefits. He noted employer's argument that claimant should be found capable of returning to his usual coal mine employment because Dr. Hudson opined that claimant could still perform the work of a foreman. However, the ALJ rejected this argument, noting: (1) there is a question as to whether claimant was required to perform manual labor when he worked as a foreman; and (2) there is no indication that Dr. Hudson ever inquired as to the level of exertion claimant had to perform when working as a foreman even though he suggested that claimant had the pulmonary capacity to perform the job. Furthermore, the ALJ declined employer's invitation to apply the Seventh Circuit's decision in *Shelton v. Director, OWCP*, 899 F.2d 690 (7th Cir.1990), in lieu of the standard enunciated by this court in *Adams*.

Employer timely appealed to the BRB. In a decision and order issued on June 13, 1995, the BRB affirmed the ALJ's order denying the motion for reconsideration and the decision and order awarding benefits.

First, the BRB found that the ALJ acted within his discretion in crediting the claimant's testimony that his usual coal mine employment was as a miner's helper, which involved doing strenuous work for most of the day. Second, the BRB found that because the miner's usual coal mine employment involved heavy manual labor, the administrative law judge's finding that the opinions of Drs. Hudson and Baker are sufficient to establish total respiratory disability was supported by substantial evidence. Third, the BRB found that since all of claimant's coal mine employment was performed within the jurisdiction of this court, the ALJ properly applied the causation standard of *Adams*.

## II.

Employer argues that the ALJ's "decision in this case reflects reliance on an incorrect causation standard as the basis for a finding of total disability due to pneumoconiosis." As noted, in his decision and order the ALJ relied on our decision in *Adams v. Director, OWCP*, as the standard for determining whether a claimant was totally disabled due to pneumoconiosis. Employer asserts, however, that in *Adams*, we "did not purport to address the many possible factual circumstances in which the application of the causation standard may arise." Rather, employer asserts that in *Freeman United Coal Min. Co. v. Foster*, 30 F.3d 834 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995), and *Shelton v. Director, OWCP*, 899 F.2d 690 (7th Cir.1990), the Seventh Circuit undertook such consideration, and consequently the ALJ should be required to apply the standard enunciated in those cases.

 Our scope of review of decisions of the BRB is limited. A decision of the BRB must be affirmed if the BRB did not commit a legal error or exceed its statutory scope of review of the ALJ's findings. *Director, OWCP v. Quarto Mining Co.*, 901 F.2d 532, 536 (6th Cir.1990). The standards of review for the BRB and this court are the same. *Welch v. Benefits Review Bd.*, 808 F.2d 443, 445 (6th Cir.1986) (per curiam). Thus, our review on appeal focuses on whether the ALJ had substantial evidence on which to base his decision. *Zimmerman v. Director, OWCP*, 871 F.2d 564, 566 (6th Cir.1989).

 If the ALJ's findings are supported by substantial evidence and are in accordance with the applicable law, the ALJ's findings are conclusive. *See Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir.1985) (per curiam). Substantial evidence is " 'more than a mere scin-

tilla;' substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 488 (6th Cir.1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In deciding whether the substantial evidence requirement is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record in deciding to either award or deny benefits. *See Director, OWCP v. Congleton*, 743 F.2d 428, 430 (6th Cir.1984). Finally, when dealing with a claim for benefits, we must keep in mind that the Act is remedial in nature and must be liberally construed "to include the largest number of miners as benefit recipients." *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir.1993).

■ As noted previously, the claim in this case, which was filed in April 1992, "was properly evaluated by the ALJ and the BRB under the Secretary of Labor's permanent regulations found at 20 C.F.R. Part 718." *Adams v. Director, OWCP*, 886 F.2d at 820. "Under Part 718, the miner must prove three facts in order to receive Black Lung Benefits: (1) that he suffers from pneumoconiosis; (2) that his pneumoconiosis arose at least in part out of his coal mine employment; and (3) that he is totally disabled by pneumoconiosis." *Id.*

In the present case, the ALJ found that claimant suffered from pneumoconiosis on the basis of chest x-rays and physicians' reports under 20 C.F.R. §§ 718.202(a)(1) and (4). The ALJ also found that claimant's pneumoconiosis arose out of his coal mine employment pursuant to 20 C.F.R. § 718.203(b). These findings are uncontested in this appeal. Thus, the issue on appeal is essentially whether substantial evidence supports the ALJ's conclusion that the opinions of Drs. Hudson and Baker were sufficient to establish that claimant was totally disabled due to pneumoconiosis under 20 C.F.R. § 718.204(c)(4).

In *Adams*, the factual scenario was as follows:

[Claimant] was a miner in underground coal mines for twelve years and two and one-half months between 1943 and 1961.... [He] was employed as a mechanic and a welder in a stone quarry, and between 1969 and 1979, he was self-employed as a mechanic and welder.... In both of these non-mining occupations, [claimant] was exposed to noxious arc-welding fumes. In addition, [claimant] had a long-standing habit of cigarette smoking.

886 F.2d at 819. However, although the record established a totally disabling lung disease and pneumoconiosis arising from coal mine employment, the ALJ denied benefits because the record held no evidence that established that claimant's total disability was due to his pneumoconiosis standing alone. *Id.* at 820.

On appeal in *Adams*, we rejected the BRB's and Director's assertion that the Act and regulations require total disability by pneumoconiosis, "in and of itself" or "standing alone." *Id.* at 824. Rather, we held:

[In] order to qualify for benefits under Part 718, a miner who is found to suffer from pneumoconiosis under section 718.202, must affirmatively establish only that his totally disabling respiratory impairment (as found under section 718.204(c)) was due "at least in part" to his pneumoconiosis.

*Id.* at 825.

Defendant relies on *Freeman United Mining Co.*, which arose under the regulations at 20 C.F.R. Part 727, and in which the miner stopped working due to a work-related back injury. 30 F.3d at 836. Moreover, there was evidence that the claimant did not suffer from a pulmonary or respiratory disability. *Id.* On appeal, the Seventh Circuit held that a claimant whose pneumoconiosis was not disabling and who could have worked except for a work-related back injury was not entitled to black lung benefits. *Id.* at 838–39.

Even though claimant Ward, like the claimant in *Freeman*, stopped working due to a back injury, *Freeman* is distinguishable from the present case. Not only does this case arise under Part 718 regulations, additionally, in the present case, claimant submitted evidence of a pulmonary or respiratory

total disability. Moreover, in *Youghiogheny & Ohio Coal Co. v. McAngues,* 996 F.2d 130 (6th Cir.1993), *cert. denied,* 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994) the claimant worked as an underground coal miner for eleven years until he was involved in an automobile accident in which he sustained serious injuries and was never able to work again. *Id.* at 132. Claimant applied for and was eventually awarded black lung benefits by an ALJ. The employer appealed, contending that because the evidence showed that claimant was totally disabled due to the automobile accident, his pneumoconiosis, even though it stemmed from his underground coal mine employment, could not be a contributing, or necessary, cause of his total disability. *Id.* at 133.

> We rejected this argument, stating:
>
> [A] review of the cases, the statute, its legislative history, and its interpretation by the benefits review board ... shows that the statute is intended to confer special benefits on miners who are disabled due to pneumoconiosis whether or not they are disabled from a different cause. Even when other causes are themselves independently disabling "[t]he concurrence of two sufficient disabling medical causes one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act."

*Id.* at 134–35 (quoting *Peabody Coal Co. v. Director, OWCP,* 778 F.2d 358, 363 (7th Cir. 1985)). Thus, the fact that claimant may, or may not, also be disabled by a back injury is not grounds for denying his claim for benefits pursuant to the Seventh Circuit's decision in *Freeman.*

Defendant further urges us to apply the Seventh Circuit's causation standard as articulated in *Shelton v. Director, OWCP.* In that case, the miner was conceded to be totally disabled due to a respiratory disease and to have pneumoconiosis. However, one of the physicians who examined claimant diagnosed chronic obstructive lung disease due to coal dust exposure, while another physician diagnosed chronic obstructive lung disease due to smoking. Faced with this conflict in the evidence, the Seventh Circuit adopted a "contributing cause" standard for

total disability due to pneumoconiosis, indicating:

> [M]ining must be a necessary, but need not be a sufficient, condition of the miner's disability; if he had not mined, he would not have become totally disabled, although he might have avoided the disability by care on some other front, for example by not smoking.

899 F.2d at 692.

 Employer now seeks to have this court apply the causation standard set forth in *Shelton.* However, as noted previously, this court has already articulated a causation standard in *Adams;* namely, that a black lung benefits claimant "must affirmatively establish only that his totally disabling respiratory impairment was due 'at least in part' to his pneumoconiosis." 886 F.2d at 825. It is well established that a panel of this court cannot overrule the decision of another panel. "The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this court sitting en banc overrules the prior decision." *Salmi v. Secretary of Health and Human Servs.,* 774 F.2d 685, 689 (6th Cir.1985). In addition, this court has stated that even though the decisions of other circuits are entitled to our respect, they are not binding upon us. *In re Tennessee Cent. Ry. Co.,* 498 F.2d 904, 905 (6th Cir.1974).

Moreover, even were we inclined to apply *Shelton* to the facts of this case, we do not agree with employer that *Shelton* would compel reversal of this case. Employer places great emphasis on the opinion of Dr. Hudson in arguing that the *Shelton* standard would result in a finding that claimant is not totally disabled due to pneumoconiosis. In this case, Dr. Hudson diagnosed simple coal worker's pneumoconiosis and chronic obstructive bronchitis. He also indicated that claimant's obstructive lung disease was due to some combination of smoking and coal dust exposure, but he was unable to assign an amount of damage to each agent. Thus, considered under the *Shelton* standard, Dr. Hudson's medical opinion neither establishes nor rules out a finding of total disability due to pneumoconiosis.

■ Turning to Dr. Baker's report, we note that he diagnosed coal worker's pneumoconiosis, category 2/1 and chronic obstructive airway disease. Dr. Baker also indicated that claimant's "impairment is due to his combined dust exposure, coal workers' pneumoconiosis as well as his cigarette smoking history." Finally, Dr. Baker indicated that claimant was physically unable, from a pulmonary standpoint, to perform either his usual coal mine employment or comparable and gainful work in a dust-free environment. He explained:

[Claimant] should have no further exposure to coal dust, rock dust or similar noxious agents due to his advanced coal worker's pneumoconiosis, chronic obstructive airway disease and bronchitis.

Thus, Dr. Baker not only diagnosed "advanced" coal worker's pneumoconiosis, but also tied claimant's pulmonary or respiratory impairment to the combined effects of his pneumoconiosis and coal mine employment. Dr. Baker also limited claimant to working in a dust-free environment and indicated that claimant's impairment would limit him even in such an environment. Dr. Baker's opinion clearly satisfied the *Adams* standard in that it establishes that claimant was totally disabled "at least in part" due to pneumoconiosis. 886 F.2d at 825.

### III.

Employer also argues that the ALJ erroneously found that claimant was unable to perform his usual coal mine work as a miner's helper, which the ALJ found involved heavy or strenuous labor. Employer asserts that the ALJ should have determined that claimant's usual coal mine work was as a laborer or foreman. Employer further asserts that even if claimant's usual coal mine work was as a miner's helper, substantial evidence would not support the ALJ's conclusion that claimant's respiratory or pulmonary impairment precluded him from that work.

■ Contrary to employer's assertions, the ALJ's finding that claimant could not perform his usual coal mine employment due to his respiratory or pulmonary impairment

is supported by substantial evidence. The regulation at 20 C.F.R. § 718.204(b) states:

a miner shall be considered totally disabled if pneumoconiosis ... prevents or prevented the miner:

(1) From performing his or her usual coal mine work; and

(2) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

■ At the administrative hearing, claimant testified that his last job classification and job duties at Cross Mountain Coal were as a miner's helper. He also described this job as involving heavy or strenuous labor. The ALJ, who had the opportunity to observe claimant's demeanor and hear his testimony at the hearing, fully credited claimant's testimony concerning his usual coal mine employment. Thus, the ALJ obviously concluded that claimant was a credible witness. "Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir., 1987). Furthermore, at least two years prior to the administrative hearing, claimant filled out an employment history form for the Department of Labor which shows that from 1986 to July 1988, he was employed as a "miner helper" at Cross Mountain Coal. Therefore, the ALJ's conclusions that claimant's usual coal mine work was as a miner's helper and that such job involved heavy or strenuous manual labor are supported by substantial evidence.

Furthermore, there is substantial evidence in the record which supports the ALJ's conclusion that claimant's respiratory impairment precludes him from performing his usual coal mine work as a miner's helper. In his report, Dr. Baker stated that claimant was unable from a pulmonary standpoint to perform his usual coal mine employment or comparable and gainful work in a dust free environment. In addition, he stated that

claimant "would have difficulty doing sustained manual labor, on an 8 hour basis, even in a dust-free environment, due to these conditions." Thus, we conclude that substantial evidence supports the ALJ's finding that claimant was totally disabled due to his pneumoconiosis pursuant to 20 C.F.R. § 718.204(c)(4).

## IV.

For the reasons stated, the petition for review is denied and that the decision of the BRB is hereby **AFFIRMED**.